The **HARTWELL CORPORATION,**
Appellant,

v.

**A. J. BUMB, Trustee, etc., Appellee.**
**No. 19642.**

United States Court of Appeals
Ninth Circuit.

May 5, 1965.

John Gemmill, Forster, Gemmill & Farmer, Los Angeles, Cal., for appellant.

J. Lane Tilson, Adams, Duque & Hazeltine, Los Angeles, Cal., for appellee.

Before BARNES and KOELSCH, Circuit Judges, and POWELL, District Judge.

BARNES, Circuit Judge.

This is an appeal from a district court order reversing a decision of a referee in bankruptcy. Jurisdiction over this bankruptcy matter was conferred upon the district court by 28 U.S.C. §§ 84(b)(2), 1331 and 1334. We have jurisdiction to entertain this appeal from the district court's final order pursuant to 11 U.S.C. § 47 and 28 U.S.C. § 1291.

The district court order does not particularize the grounds upon which it reversed the referee's decision. We can only infer from the summary approach that the district court accepted the findings of fact of the referee but found the decision reached incorrect as a matter of law.

The undisputed findings of fact of the referee state that this controversy involves a suit against the trustee in bankruptcy for the United States Chemical Milling Corporation for damages sustained as the result of misrepresentation and breach of warranty. In the course of the bankruptcy proceedings, the trustee sought to sell an autonomous division of the bankrupt, "Missile-Air Latch Division." The trustee solicited an offer from appellant in the course of which he made a written representation that "backlog in this division as of August 31, 1962, was for the gross sum of $60,872.00." (Appellant's Ex. 1.) Relying in part upon this backlog representation, appellant submitted an offer to purchase the division.

The statement regarding the backlogged orders was undeniably false. The actual backlog as of August 31, 1962, as determined by the referee, was $22,152.00. The error resulted from the careless preparation of data by an employee of the bankrupt.

The trustee accepted appellant's offer on November 30, 1962. It was not until on or about January 18, 1963, that appellant first learned of the misrepresentation regarding backlog. By this date, however, appellant had already entered into an escrow agreement with the trustee and had deposited $45,000.00 pursuant to the escrow instructions, and had taken possession of a substantial portion of the physical assets of the purchased division. Upon learning of the error in the statement of backlog of orders, appellant notified appellee that it wished to complete performance of the contract but that in so doing, it did not intend to waive its claim for damages. The conditions of the escrow were subsequently fulfilled and the duties of the parties were discharged. Appellant then sought reimbursement for the damages it purportedly sustained.

The referee concluded that the trustee had negligently misrepresented the amount of the backlog. As a result of this negligent misrepresentation, the referee concluded that appellant had sustained damages in the amount of $14,579.06.[1]

The district court found that the referee had erred in granting judgment against the trustee, and entered an order reversing that judgment. The district court gave no reasons for its action. We find that no legal basis exists to sustain this reversal.

■ The evidence and the findings support the referee's conclusion that appellee was guilty of negligent misrepresentation. The tort of negligent misrepresentation does not require that the person making the statement be aware of its untruth. This tort was developed to protect a purchaser injured by a misrep-

---

1. This amount was arrived at in the following manner:

    1. The difference between the actual backlog and the misstated backlog was $38,720.00 ($60,872.00 less $22,152.00.)

    2. Twenty per cent of the backlog was deducted as an estimate of what would have been cancelled under the normal attrition rates. (20% of $60,872.00 equals $12,174.00.) This left a gross profit of $26,546.00. ($38,720.00 less $12,174.00.)

    3. The net profit before federal income taxes was calculated by applying the company's normal rate of return to the gross income. ($26,546.00 multiplied by 54.92%.) The loss in profits was thus determined to be $14,579.06.

resentation even in the absence of an intent to deceive on the seller's part. Thus California Civil Code § 1572 recognizes a cause of action for misrepresentation where no intent to deceive is alleged. It defines actual fraud as:

"2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true * * *."

California Civil Code § 1573 also makes it clear that deceit is not a necessary element of an action at law for misrepresentation:

"Constructive fraud consists:

"1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or,

"2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

See also Clar v. Board of Trade, 164 Cal. App.2d 636, 331 P.2d 89 (1958).

■ The findings of the referee, supported by undisputed evidence, conclude "[t]he erroneous statement as to the amount of said backlog in the said letter of October 22, 1962, was the result of carelessness and negligence on the part of an employee, or employees of Respondent, in obtaining information as to the amount of backlog in each of the Bankrupt's divisions. This information was obtained at Respondent's request, and Respondent made no effort to verify the information so received." (Tr. p. 66.) We therefore reject appellee's contention that he cannot be held liable because he had a reasonable basis for his representation and because the representation was in accord with his information.

■ The referee found that appellant's reliance was justified. We find sufficient evidence in the record to support this finding. The evidence is ambiguous as to whether or not the trustee informed appellant that he could not confirm the amount of the backlog of orders. But even if the record could support the contention that such a statement was made, no evidence can be found to support the argument that appellee sufficiently forewarned appellant so that appellant should have conducted an independent investigation. The trustee did little more than inform appellant that the backlog figure was based upon the calculations of an employee of the bankrupt. Nothing the trustee said could be utilized to support a characterization of appellant's reliance on the backlog figure as unjustified.

■ Appellee also contends that appellant *waived* its objections, i. e., that appellant's reliance was unjustified because, upon learning of the misrepresentation, appellant chose to proceed with the performance of the contract rather than to seek immediate rescission. This contention is contrary to the law and sound reasoning. To encourage the expedient flow of commercial goods, contemporary commercial law seeks to encourage the fulfillment of contractual obligations with monetary adjustments for minor variances. The philosophy of the new Uniform Commercial Code is to this effect. And the California case law, even prior to the adoption of the Uniform Commercial Code in California, has long recognized that one can affirm a contract and then sue for damages resulting from misrepresentations during the contract negotiations. Harold v. Pugh, 174 Cal.App. 2d 603, 610, 345 P.2d 112 (1959); Squire's Dept. Store, Inc. v. Dudum, 115 Cal.App.2d 320, 323, 252 P.2d 218 (1953); Bagdasarian v. Gragnon, 31 Cal. 2d 744, 750, 192 P.2d 935 (1948). We find that appellant's affirmance of the contract does not make its reliance unjustified, nor preclude it from recovering for the damages sustained as a result of the misrepresentation.

The district court order to reverse made no mention of the propriety of the method used by the referee to calculate the measure of appellant's damages. Appellee, in his brief, argues at great length

that the damage calculation was incorrect, and that appellant in fact sustained no injuries from the misrepresentation. Appellee urges that the only proper method of calculation is the so-called "out-of-pocket" approach, which compares the value of the detriment suffered by each party to the entire contract. Appellee contends that the value of that received by appellant, even using the actual backlog figure, exceeded the value of that given by appellant. Appellee reaches this conclusion by attempting to evaluate each element of consideration involved in the transaction.

We agree that in some instances the "out-of-pocket" approach is a correct measure of damages and has been properly used in a number of cases. It is the general rule adopted by § 3343 of the California Civil Code. But we cannot blindly adhere to this approach as the exclusive measure of damages. In the present case, the referee relied upon what is commonly referred to as the "benefit of the bargain rule," comparing the value of what was represented would be received to the value of what actually was received. The district court apparently did not object to this approach. Many courts have recognized this approach as a reasonable method of damage calculation. Under the circumstances presented in this case, we think it is reasonable to conclude that the "benefit of the bargain" approach would be the more accurate method of damage measurement for it would not entail a valuation of each element of the contractual consideration. The method used by the referee merely had to compare two readily ascertainable figures, viz., the actual backlog as of August 31, 1962, and the represented backlog as of that date. The method used is an accurate measurement of the damages sustained, and nothing in the district court order, the record of the bankruptcy proceedings, or the appellee's brief leads us to a contrary conclusion.

Since the district court has supplied no reason casting doubt on the accuracy or validity of the referee's calculations, we will abide by the referee's expert judgment as to the most appropriate measurement of damages, under the facts of this case.

We reverse the order of the district court and remand with instructions to reinstate the judgment of the referee in bankruptcy.