John Walter CHANEY, Plaintiff,

v.

WESTERN STATES TITLE INSUR-ANCE COMPANY and Robert Anderson, Defendants.

No. C 17-67.

United States District Court
D. Utah,
Central Division.

Oct. 3, 1968.

Gerald R. Miller, and Frederick S. Prince, Salt Lake City, Utah, for plaintiff.

Richard H. Nebeker, Salt Lake City, Utah, for defendant Western States Title Ins. Co.

Robert Anderson, Seattle, Wash., pro se.

## MEMORANDUM DECISION CONCERNING DAMAGES AND ATTORNEY'S FEES

CHRISTENSEN, District Judge.

The jury's verdict and my formal findings and conclusions sufficiently indicate the bases of liability and damages on all points except a conflict of laws problem affecting the measure of damages, and questions of attorney's fees and interest.

It is sufficient to note as background for these points that the plaintiff entered into a transaction involving an exchange by plaintiff of real property in California for two promissory notes, and an assignment of uniform real estate contract on Utah property from one Ogle and his associate; that the transaction was one of numerous similar transactions in which Ogle, et al were involved; that the transfer of the uniform real estate contract by them constituted the sale of a security within the meaning of Section 3(a) (10) of the Securities Exchange Act of 1934;[1] that the plaintiff was induced to buy said security by fraudulent representations of the defendant Anderson, who acted with the apparent authority of the corporate defendant; that jurisdiction exists under the Securities Exchange Act,[2] and that pendant common law and Utah Uniform Securities Act[3] claims were also tried.

Plaintiff is a citizen of California, defendant Anderson a citizen of Utah, and the defendant Western States Title is a Utah corporation having its principal place of business in Salt Lake City, Utah.

The plaintiff was successful before a jury in establishing false representation within the contemplation of § 10(b) of the Securities Exchange Act[4] and Rule 10(b)–5[5] promulgated thereunder, and on the common law claim for fraud, but could not establish violation of the state act[6] because the sale in question occurred outside Utah, although the fraudulent representation originated therein.[7] The submission of the case to the jury through special interrogatories left for determination by the court the questions of damages, attorney's fees and interest.[8]

It must be decided whether the Benefit of the Bargain Rule or the Out-of-Pocket Rule applies in determining the amount of damages. It is clear that on plaintiff's claim under the Securities Exchange Act the Out-of-Pocket Rule generally followed by the federal courts should apply.[9] It is arguable at least theoretically that the Utah Benefit of the Bargain Rule[10] should apply to plaintiff's common law fraud claim, in which event the limitations of the federal rule would be rendered inoperative.

I have concluded that the Benefit of the Bargain Rule really has no application either in justice or in fact in view of the plaintiff's inflated valuation of the California property which he exchanged for the security. This is not to disparage the jury's finding that defendant Anderson, and through him the corporate

---

1. 15 U.S.C. § 78c(a) (10) (1964).

2. 15 U.S.C. § 78aa (1964).

3. Utah Code Ann. § 61–1–1 to 61–1–30 (Repl.Vol.1968).

4. 15 U.S.C. § 78j (1964).

5. 17 C.F.R. § 240.10b–5 (1964).

6. Utah Uniform Securities Act, Utah Code Ann. § 61–1–1 to 61–1–30 (Repl.Vol. 1968).

7. See Utah Code Ann. § 61–1–26 (Repl. Vol.1968).

8. Fed.R.Civ.P. 49.

9. See, e.g., Janigan v. Taylor, 344 F.2d 781 (1st Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 303 F.2d 527, 533 (10th Cir. 1962).

10. See, e.g., Pace v. Parrish, 122 Utah 141, 247 P.2d 273 (1952); Kinnear v. Prows, 81 Utah 135, 16 P.2d 1094 (1932); Hecht v. Metzler, 14 Utah 408, 48 P. 37 (1897).

defendant, deliberately defrauded the plaintiff contrary to both the common law and the federal securities statutes. But it is also manifest that plaintiff engaged in his own overreaching. The preponderance of the evidence, as well as the jury verdict, indicates that the plaintiff greatly exaggerated the value of the California property by impliedly representing that it was worth $156,000 when in reality it was worth only $40,000. That plaintiff did not expressly represent this inflated value does not alter the incongruity of recognizing such a misrepresentation by applying the Benefit of the Bargain Rule to give plaintiff a windfall of approximately $100,000 more than he fairly bargained for.[11]

■■ A federal court must, of course, follow the conflicts of law rule of the state in which it is sitting.[12] The Utah Supreme Court has not spoken on the issue in this particular context; I must therefore determine what the Utah law would be in this situation.

■ I do not think that application of the Out-of-Pocket Loss Rule is inconsistent with the proper conflict of laws rule, although I concede that Utah would ordinarily apply the Benefit of the Bargain Rule to the common law fraud count.[13] In making a conflicts of laws decision in this case the Utah court could consider not only the contacts of the transaction with various jurisdictions, but the respective governmental interests and public policies of those jurisdictions. In addition, the Utah court could be faced with a peripheral violation of the Utah Uniform Securities Act and not with common law fraud alone. The transaction had significant contacts with the State of California: While Anderson was a resident of Utah, the misrepresentations were made to the plaintiff over the telephone while Anderson was in Utah and the plaintiff was in California; the property which was the consideration for the security was located in California; the transaction's center of gravity was arguably as much in California as in Utah. Both Utah and California have an interest in preventing fraudulent securities transactions within their borders and in enforcing their own securities laws. Neither state would find it desirable to foster violations of the federal securities laws, even though a particular transaction might not clearly violate the state law. The securities acts of both states measure damages according to the Out-of-Pocket Rule as does the federal act. In addition, neither state should be inclined voluntarily to reward any sharp dealing engaged in by plaintiff in the valuation of his own land if he could otherwise be reasonably compensated for his loss. Hence, measuring damages in accordance with the California and federal rules does violence to no public policy of the State of Utah, and in fact fosters that policy as indicated by Utah's own securities statute, Utah Code Ann. § 61–1–22 (Repl. Vol. 1968), which in corresponding cases permits recovery of the consideration paid for a security together with interest, costs, and attorney's fees less income received.

Under the circumstances of this case, therefore, there seems really no basic conflict between the Utah and California policies and I conclude that Utah would not reject the out-of-pocket loss measure of damages.[14] In any event, as suggested in Hartwell Corp. v. Bumb, 345 F.2d 453, 13 A.L.R.3d 868 (9th Cir. 1965)

11. Cf. Moscarelli v. Stamm, 288 F.Supp. 453 (1968) where the U.S.District Court for the Eastern District of New York held that a broker's civil liability to his customers for margin violation was not absolute "but is subject to the traditional tort concepts of causation and contributory negligence or analogous conduct." Thus, the customer's instigation or willful participation in the violations precluded recovery by rescission under Section 29(b) of the Securities Exchange Act of 1934.

12. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

13. See note 10, supra.

14. Cf. Bernkrant v. Fowler, 55 Cal.2d 588, 12 Cal.Rptr. 266, 360 P.2d 906 (1961) (Traynor, J.); DeFoor v. Lematta, 437 P.2d 107 (Or.1967); Fuerste v. Bemis, 156 N.W.2d 831 (Iowa 1968).

and United States v. Ben Grunstein & Sons, 137 F.Supp. 197 (D.N.J.1965), courts should not blindly adhere to a particular measure of damages in circumstances rendering it unjust when there is a reasonable measure that is more appropriate and just is available. I think the Out-of-Pocket measure is just that.

I have also concluded—and somewhat reluctantly—that I cannot award attorney's fees either as an element of plaintiff's damages or as a part of his taxable costs. Under the authorities from superior courts, the decisions of which bind me, support for such an award would have to be found in a statute unless there were extraordinary circumstances not present here.

 On the equities, it must be recognized that the successful litigant does not recover the full "value" of a security of which he has been deprived by fraud when he must pay substantial attorney's fees out of his judgment; and attorney's fees would appear to be a logical component of a judgment that in fact fully compensates a defrauded plaintiff. When a statute expressly allows the recovery of "value" or "reasonable compensation" or the amount of the "loss", or other similar measures, it does not require a great deal of logical manipulation to preserve the full value of the compensation contemplated by the statute by including attorney's fees in the award.[15] That, however, is not the situation here. The Securities Exchange Act of 1934 does not expressly create a private right of action for violations of Rule 10b–5; the right has been implied by the courts from the general provisions of the Act.[16] Thus, to imply the right to attorney's fees in civil actions under Rule 10b–5, the courts would be basing an implication on an implication—an implied right to attorney's fees based upon an implied civil liability.[16a] Although not impossible in view of the modern acceptance of evidentiary inferences drawn upon inferences, such a feat requires more mental and conceptual agility than I can now muster in view of the following authorities which at best deflate the very idea and at worst prohibit it: Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed. 2d 475 (1967). Cf. Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); New Park Mining Co. v. United Steelworkers of America, Local Union No. 4264, 288 F.2d 225 (10th Cir. 1961); United Pac. Ins. Co. v. Northwestern Nat. Ins. Co., 185 F. 2d 443 (10th Cir. 1950) (in the absence of agreement right to attorney's fees purely statutory since right did not exist at common law); Michigan Public Serv. Comm'n v. Mackinac Transp. Co., 43 F.R.D. 202 (W.D.Mich.1966).

15. See United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957).

16. See Kardon v. National Gypsum Co., 69 F.Supp. 512, Supplemented, 73 F. Supp. 798 (E.D.Pa.1947). See also Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). For a discussion of the problem see 3 L. Loss, Securities Regulation 1757–71 (2d ed.1961); Dykstra, Civil Liability under Rule 10b–5, 1967 Utah L.Rev. 207, 209–10. Although once questioned, federal courts today generally recognize a private right of action to recover damages for violation of Rule 10b–5. 3 L.Loss, supra, at 1763–64. This court is committed to the view that this rule protects defrauded buyers as well as defrauded sellers. Jensen v. Voyles, 393 F.2d 131 (10th Cir. 1968). Doelle v. Ireco Chemicals, 391 F.2d 6 (10th Cir. 1968).

16a. It is true that Section 28 of the Securities Exchange Act, 15 U.S.C. § 78bb, provides that "no person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgments in one or more actions, a total amount in excess of his actual damages on account of the act complained of." But a right to recover under the provisions of that chapter in a 10b–5 action still must be inferred. Moreover, the emphasis upon the proscription of a recovery of "a total" amount in excess of his actual damages, could be construed as an intent to preclude attorney's fees.

I have concluded that an award of attorney's fees in this case cannot be based upon the Securities Exchange Act and can find no other statutory authorization for such an award. Utah's Uniform Securities Act [17] does not apply because the actual sale occurred outside the State of Utah.[18] In a sense, the transaction here is sufficiently relevant to the subject matter of the state statute to make attractive the idea of rendering plaintiff's remedy complete by awarding attorney's fees by analogy to the state statute. Were it not for the circumstance that the sale of the security occurred outside the State of Utah, the Utah statute providing for attorney's fees would clearly be applicable. The theory of using the Utah provision by analogy is that since the Securities Exchange Act is silent as to attorney's fees, recoverability should be governed by the laws of the state where the scheme to defraud was executed; Utah should be considered to be the state of execution, since Anderson was there when he made the determinative representations; the Utah statute would, therefore, be utilized. This is similar to reasoning which has been employed in Miller Act cases where it has been held by some courts that attorney's fees may be recovered by analogy with state law, although the Miller Act is silent as to such fees.[19] The Miller Act, however, expressly allows the recovery of the "amount" or the "balance" and permits the plaintiff to "prosecute said action to final execution and judgment for the sum or sums justly due him";[20] awarding attorney's fees consistent with state law to implement such recovery could be considered as authorized by the Act. Here, the Securities Exchange Act does not expressly authorize the action itself, much less attorney's fees.

There may be securities cases where the court should strike a blow for more adequate recompense to defrauded buyers or sellers by engrafting attorney's fees upon the remedy. Whether in even the most favorable case such an attempt would survive review at present is doubtful. But in any event, by reason of circumstances before noted, this is not the strongest case for such an effort from standpoints of equity as well as law.

However, considering it necessary to render adequate and effective the award of damages, I find no insuperable obstacle to the award of pre-judgment interest corresponding to that which would be allowed under the state statutes, and have included such interest in the judgment being entered today.[21]

17. Utah Code Ann. § 61–1–1 to 61–1–30 (Repl.Vol.1968).

18. Id. at § 61–1–26.

19. See United States Fidelity & Guaranty Co. v. Hendry Corp., 391 F.2d 13 (5th Cir. 1968); Sam Macri & Sons, Inc. v. United States for Use of Oaks Const. Co., 313 F.2d 119 (9th Cir. 1963); United States for Use and Benefit of Caldwell Foundry & Mach. Co. v. Texas Const. Co., 237 F.2d 705 (5th Cir. 1955); United States for Use and Benefit of Western Steel Company v. Reliance Ins. Co., 227 F.Supp. 939 (D.Mont.1964); United States for Use and Benefit of Puget Sound Dredging Co. v. Elwin, 219 F.Supp. 418 (D.Alaska 1961); United States for Use and Benefit of United Insulation Co. v. Williams & Dunlap, 210 F.Supp. 491 (W.D.La.1962); United States for Use and Benefit of E. J.

Bartells Co. v. Hoffman Construction Co., 163 F.Supp. 296 (E.D.Wash.1958); United States for Use and Benefit of Magnolia Petroleum Co. v. H. P. Henderson & Co., 126 F.Supp. 626, 637–638 (W.D.Ark.1955); United States for Use and Benefit of Midwest Steel & Iron Works Co. v. Henly, 117 F.Supp. 928 (D.Idaho 1954). In several of these cases, however, the state statutes were couched in such general terms as not to exclude Miller Act suits.

20. Miller Act, 40 U.S.C. § 270b(a) (1964).

21. See Speed v. Transamerica Corporation, 235 F.2d 369 (3d Cir. 1956); III Loss, Securities Regulations at 1795. See also Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941). Cf. Collier v. Granger, 258 F.Supp. 717 (S.D.N.Y.1966).