Filed 3/12/13  Tortolano v. Residential Credit Solutions CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANTONIO TORTOLANO, | B238796 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC448607) |
| v. | |
| RESIDENTIAL CREDIT SOLUTIONS, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Mark V. Mooney, Judge.  Affirmed in part and reversed in part.

The Law Office of Victor E. Hobbs, Victor E. Hobbs, and Jang H. Kang for Plaintiff and Appellant.

McNulty & Saacke, William C. Saacke for Defendants and Respondents.

## INTRODUCTION

Plaintiff and appellant Antonio Tortolano appeals from a judgment in favor of defendants and respondents Residential Credit Solutions, Inc. and Deutsche Bank National Trust Company, in its capacity as indenture trustee for Ames[1] Mortgage Investment Trust 2005-2, following the trial court's granting of defendants' demurrer to the second amended complaint (SAC) without leave to amend. Plaintiff sued individually and on behalf "of the general public" based on deceptive and fraudulent origination of a mortgage loan, wrongful and unjust loan modification review and wrongful commencement of foreclosure on his home. We hold that plaintiff has failed to state a cause of action based on a breach of contract, certain violations of statutes, but has stated a cause of action for negligent misrepresentation and under the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200). We therefore reverse as to the negligent misrepresentation and UCL causes of action.

## FACTUAL BACKGROUND

The following constitutes a summary of the relevant allegations in the 272 paragraphs of plaintiff's prolix second amended complaint.[2]

In 2005 Ames approached plaintiff about a loan on his home in order to refinance the existing loan. Ames promised to refinance the loan to keep payments low. Plaintiff signed a note and deed of trust for $213,000, with the initial interest rate of 6.650 percent. The interest rate in 2007 was to be 6.350 percent added to the current LIBOR index. Thus, the initial payments went from $1,371.24 to $1,797.24. Despite assurances of lower payments, Ames did not disclose the increase in the rate and the excessive

---

[1] Plaintiff spells the name Aames, which is in the caption.

[2] Others were named as defendants. This appeal does not involve them, so we do not include allegations about them. Plaintiff appeals from an order or judgment dated "12/2/2011." The order of demurrer was November 2, 2011, and the judgments of dismissal were dated December 2, 2011 and January 3, 2012.

origination fee—$7,476. Ames then sold the loan on the secondary market, generating further profits. This was a subprime loan for which plaintiff was not qualified, and the loan was not consistent with Ames's underwriting standards. Ames sent a notary to plaintiff to sign various papers. The notary did not explain or disclose the terms of the loan to plaintiff.

In 2007, plaintiff had health problems and stress and asked RCS, the loan servicer, to refinance as promised by Ames. Ames and Residential Credit Solutions (RCS) refused to refinance the loan. Plaintiff then sought a loan modification, with the participation of the federal government under the "Home Affordable Modification Program" (HAMP). RCS did not negotiate in good faith and directed plaintiff to a loan he could not afford. Plaintiff's loan, which was adjustable, had risen to 10.65 percent, with his monthly payment being $1,946. Plaintiff owed more than the property was worth.

In 2008, RCS presented plaintiff with a loan modification having an interest rate of 8.5% and monthly payments of $1,629.17, increasing to 9.5% later in 2008 and to 10.65% in 2009. RCS demanded a two months payments before the first payment came due. RCS pressured plaintiff into accepting this modification on March 15, 2008, "trusting that RCS was looking out for his best interests." RCS failed to inform plaintiff that the LIBOR index was falling so that plaintiff's current interest rate and payments would be lower than the loan proposed by RCS.

In 2008, Deutsche was the "Note Holder" of the loan modification. Plaintiff ultimately defaulted on the loan and sought a loan modification from RCS. After RCS made offers, rescinded them, and prepared temporary plans with up-front payments, it provided a HAMP Trial Plan dated August 25, 2009 with an effective date of August 18, 2009; thus even if plaintiff made the required payment, he would already be in default. The agreement, however, provided that payment was due thereafter. The documents contained other errors and inconsistencies. RCS assured plaintiff that a modification document would be redrawn.

RCS then said plaintiff would have to reapply for the loan. Plaintiff tried to make payments to RCS, but it said the HAMP review had not been finalized. RCS kept

requesting more information and had a succession of negotiations. Meanwhile, RCS and other defendants were proceeding with a foreclosure. Several months later, RCS said plaintiff did not qualify for the HAMP program due to a failed "net percent value." RCS, by refusing payments and otherwise manipulating the net percent value test insured plaintiff would not qualify.

Defendants failed to negotiate or provide a meaningful loan modification review in good faith and have not produced a meaningful participant in the loan modification process. Plaintiff "is presently in a position to tender the amounts due under the Note in the form of reasonable payments."

Defendants have improperly and fraudulently instituted foreclosure proceedings. Neither Ames nor the trustee executed the notice of default—instead Integrated Lender Services (Integrated), which was substituted in as trustee four months after it signed the notice of default, did so. It had no authority to execute that notice and was not an independent third party as a trustee is supposed to be. Moreover, the substitution of trustee instrument is void because the notary failed to sign it.

The trustee should have restrained the sale because the right to foreclose was disputed. Thus, any sale should be void, voidable or invalid. Also, because neither Integrated nor Deutsche had any authority to execute the notice of default, that notice is void, voidable or invalid. And the substitution of the trustee improperly was backdated to before the notice of default. The assignment of the deed of trust from Ames to Deutsche is also invalid because the signatory is a person who works for neither entity but for RCS. The signator had no authority to sign for Ames.

The causes of action are as follows:

*First Cause or Action against RCS for breach of contract.* Plaintiff had a contract for the loan with RCS under the HAMP, but RCS prevented plaintiff from performing under it.

*Second Cause of Action against RCS for breach of the implied covenant of good faith and fair dealing.* This cause of action is based on the allegations in the first cause of action.

4

*Third Cause of Action against all defendants for fraud*. Defendants' promised to refinance of the loan at an affordable rate but did not do so. Various documents were improperly or fraudulently signed leading to an improper foreclosure. Based on misrepresentations, plaintiff sought to refinance his loan and was induced into entering into a modification that was not in his best interest and that resulted in a default and foreclosure.

*Fourth Cause of Action against RCS, and Deutsche for negligent misrepresentation* . This cause of action is based on the same acts alleged in the Third Cause of Action.

*Fifth Cause of Action against RCS for violation of Civil Code section 2923.5 requiring certain procedures be followed prior to a notice of default and foreclosure.* RCS did not engage in "meaningful participation" in foreclosure avoidance and otherwise did not comply with the statute.

*Sixth Cause of Action against Deutsche and others for wrongful foreclosure, violation of Civil Code section 2932.5 and improper notice of default, improper substitution of trustee and improper assignment of the deed of trust.*

*Seventh Cause of Action against all defendants for unfair competition under Business and Professions Code section 17200.*

Plaintiff seeks a declaration that the foreclosure was wrongful; a restraining order against proceeding with the foreclosure; an order compelling a fair and equitable review for modification of the note; damages; punitive damages; and attorney fees.

The trial court sustained defendants' demurrer without leave to amend and dismissed the action. Plaintiff only appeals the dismissals of Deutsche and RCS.

Defendants have requested judicial notice that the trustee sale of plaintiff's property took place on May 8, 2013, and a trustee's deed upon sale was recorded. We grant the request for judicial notice.

## DISCUSSION

### A.       Standard of Review

On appeal from a dismissal following the sustaining of a demurrer, we review the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory.  (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 122.)  ""'"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed."  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]'  [¶]  When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, it will conclude that the trial court abused its discretion by denying the plaintiff leave to amend.  [Citation.]  The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect.  [Citation.]"  (*Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 75-76.)  We do not have to accept as true plaintiff's contentions, deductions, or conclusions of fact or law.  (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 87.)  Plaintiff has sought to amend his second amended complaint at the hearing before the trial court but did not in his opening brief on appeal argue he should be entitled to amend it.  He only raised the matter in his reply brief.  We therefore treat this issued as forfeited.  (See *Doe v. Roman Catholic Archbishop of Cashel and Emly* (2009) 177 Cal.App.4th 209, 219, fn. 4; *Stoll v. Shuff* (1994) 22 Cal.App.4th 22, 25, fn. 1.)

**B.     Breach of Contract and Breach if Implied Covenant of**

**Good Faith and Fair Dealing (RCS)**

The breach of contract and implied covenant of good faith and fair dealing causes of action (first and second causes of action) are based on the HAMP Trial Plan offered by RCS, which was not signed. Plaintiff alleges as follows: RCS promised the loan modification under the HAMP Trial Plan, but failed to comply with that promise. The lack of signature on the agreement was due to the error of RCS. Nevertheless, there was an oral agreement. Plaintiff failed the Net Present Value Test because of RCS's negligence. The oral agreement is enforceable because of RCS's promises that were relied upon by plaintiff.

The unsigned agreement provides, "This Plan will not take effect unless and until both I and the Lenders sign it and Lender provides me with a copy of this Plan with the Lender's signature." Thus, there is no enforceable agreement.

The statute of frauds applies to any agreement to lend money in excess of $100,000 (Civ. Code, § 1624, subd. (a)(7)). Plaintiff relies upon the doctrine of estoppel to avoid the statute of frauds and to supply consideration. But he never pleaded estoppel.

Moreover, plaintiff suffered no detriment. He already owed money. Failing to make contractually required payments is not the detriment envisaged by the doctrine. Plaintiff does not allege any opportunities he "forewent."

Plaintiff alleges he submitted financial information to RCS in January, 2009, which provided a HAMP Trial Plan dated August 25, 2009, even though it had an effective date for payment of August 28, 2009. On September 17, 2009, RCS said it would redraw the documents to provide for a November 1, 2009 starting date and confirmed this promise in writing. On October 2, 2009 RCS withdrew that promise, requiring plaintiff to reapply. But RCS said, so long as there are no substantial changes in plaintiff's information "everything should be fine." Between October 2009 and March 2010 RCS requested further information until it told plaintiff he did not qualify. The breach of contract claim relies solely on the failure to provide for a November 1, 2009

7

starting date. The breach alleged is the failure to redraw the proposed modification "as promised on September 17, 2009."

Plaintiff relies upon federal cases for the proposition that similar allegations are sufficient to allege a breach of contract. (See *Lyons v. Bank of America, N.A.* (N.D. Cal., Dec. 16, 2011, C11-1232) 2011 WL 6303390 (*Lyons*); *Ansanelli v. JPMorgan Chase Bank, N.A.* (N.D. Cal., March 28, 2011, C10-03892) 2011 WL 1134451 (*Ansanelli*.) In both cases the courts noted that expending time and energy in making financial disclosures constitutes considerations. (See *Raedeke v. Gibralter Sav. and Loan Assn.* (1974) 10 Cal.3d 665, 673-674.) But in *Lyons*, the plaintiff expressly alleged an oral modification agreement, and in *Ansanelli*, the plaintiff alleged that he made payments. Plaintiff has made no such allegations. Plaintiff has even failed to allege the consideration for any agreement or the detriment he incurred because of RCS's failure to comply with the promised commencement date, which is the essence of his cause of action.

Notwithstanding plaintiff's conclusion that there was a contract, his allegations as to what occurred do not amount to a contract. Indeed, he alleges he was still waiting for information. It may well be that RCS made other promises or "strung plaintiff along" and mishandled his application, but there was no contract and no enforceable promise alleged. That being so, there was no implied covenant of good faith and fair dealing. (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031-1032.) It may be that RCS's conduct was actionable, but not under the breach of contract and breach of an implied covenant of good faith theories alleged by plaintiff.

### C. Misrepresentation (RCS and Deutsche)

#### 1. *Intentional Misrepresentation*

Although plaintiff's allegations are difficult to decipher, there appears to be a variety of theories for the fraud and negligent misrepresentation causes of action.

8

Plaintiff alleges that his loan modification reduced the rate from 10.65 percent to 8.5 percent, but that the LIBOR component was dropping so that his actual interest rate and payments in his existing loan would be better for him then the loan modification being pushed by defendants. Plaintiff does not, however, allege that defendants failed to inform plaintiff of this fact with the intent to deceive, a requirement to state a fraud cause of action. (Civ. Code, § 1709; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 802, p. 1158 (Witkin).) Moreover, the allegations as to who made representations are murky. Plaintiff refers to Ames, but it is not a party on appeal. Plaintiff has a general allegation of agency among all the defendants. General allegations of agency may be sufficient (*Skopp v. Weaver* (1976) 16 Cal.3d 432), but in a fraud cause of action, specificity in pleading is required. Plaintiff has not complied with the requirement for specific pleading for a fraud claim. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184; 5 Witkin, Cal. Procedure (5th ed. 2008), Pleading, § 712, p. 128.) There is no specific allegation as to Deutsche, which is sued as trustee for Ames. Plaintiff did not allege facts showing the required knowledge of falsity or intent to deceive or reliance. (5 Witkin, *supra,* Summary of Cal. Law, Torts, § 772, p. 1121.)

Nondisclosure of the dropping of the LIBOR rate was not actionable. Defendants were not in a fiduciary or other confidential relationship with plaintiff. Generally, it is such a relationship that imposes a duty of disclosure (Civ. Code, § 1710, subd. (3); 5 Witkin, *supra,* Summary of Cal. Law, Torts, § 794, at p. 1149). The relationship between a lender and borrower is not fiduciary in nature. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1093, fn. 1 ["To the extent this cryptic allegation may be construed as pleading a breach of fiduciary duty, it fails as a matter of law. The relationship between a lending institution and its borrower-client is not fiduciary in nature"]; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 478.) Plaintiff did not attempt to plead such a relationship. Plaintiff's allegations lack the required specificity for a misrepresentation action.

Plaintiff claims the Notice of Default, the Substitution of Trustee, and Assignment of Deed of Trust were fraudulent because the signators lacked authority to sign. These

allegations do not involve fraudulent misrepresentations. Such allegations may invalidate certain steps that were taken, but do not, as pleaded, constitute an intentional misrepresentation. For these reasons, plaintiff has not stated a cause of action for misrepresentation.

### 2. *Negligent Misrepresentation*

Plaintiff alleges that RCS said it would provide a loan modification that "would help [plaintiff] before his loan adjusted once again." Instead RCS provided a loan that "did not help plaintiff." RCS represented to plaintiff that the loan modification by Deutsche would be in his best interest and that his payments and interest would be lower. The March 15, 2008 loan agreement, negotiated by RCS. But RCS' promises were false because had plaintiff kept his existing loan, his rates and payments would be lower because of the dropping of the LIBOR rate. Plaintiff alleged the misrepresentation was intended to induce him to enter into the more onerous loan modification, which ultimately led to the foreclosure. Plaintiff specifies the persons from RCS who made the representation and the date of the misrepresentation.

Negligent misrepresentation consists of a false statement made to plaintiff with intent to induce reliance, plaintiff's reliance, plaintiff's lack of awareness of the falsity of the representation, and that statement was made by a defendant without a reasonable ground for believing it to be true—i.e. negligently. (See 5 Witkin, Summary of Cal. law, *supra,* Torts § 818, p. 1181.) Plaintiff's allegations, although not stated with precision or in an organized fashion, can be read to state a cause of action for negligent misrepresentation against RCS, at least by "reasonable implication." (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517.) Plaintiff has an agency allegation, thus stating a cause of action against Deutsche.

As another basis for the negligent misrepresentation claim, plaintiff alleges the promise to redraw the HAMP Trial Plan discussed above. It appears that plaintiff does not allege sufficient facts showing that such a promise constituted a negligent

10

misrepresentation for plaintiff does not allege facts sufficient to satisfy the requirement elements set forth above.

### D. Violation of Civil Code Section 2923.5 (RCS)

The sale took place after the appeal. It is true this had not taken place before the trial court. Nevertheless, events thereafter and after the appeal is filed can make a matter moot. (*Hidden Harbor, Inc. v. American Federation of Musicians* (1955) 134 Cal.App.2d 399, 402; see *Giles v. Horn* (2002) 100 Cal.App.4th 206, 226-227.) Non compliance with Civil Code section 2923.5, which provides for certain contacts to be made with the borrower before proceeding with a non judicial sale, results in a postponement of the sale and does not result in any cause of action after the sale. (*Skov v. U.S. Bank National Assn.* (2012) 207 Cal.App.4th 690, 695-696; *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 214; *In re Cedano* (9th Cir. Bankr. 2012) 470 B.R. 522, 532.) Thus, any action for violation of Civil Code section 2923.5 is moot.

### E. Wrongful Foreclosure—Violation of Civil Code section 2932.5 (Deutsche)

Civil Code section 2932.5 provides for a power of sale under an assigned mortgage. Here, plaintiff alleges defects in the assignment. Plaintiff's action is to prevent the foreclosure—"Wrongful Commencement of Foreclosure." As that has already taken place, this claim can be viewed as moot. But under the liberal rules of pleadings, the action can be viewed as one for wrongful foreclosure. Nevertheless, plaintiff must allege tender of the amount owing. (*Shuster v. BAC Home Loans Servicing, L.P.* (2012) 211 Cal.App.4th 505, 512 (*Shuster*)[3]; *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; see also *Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424 [an action to set aside trustee sale is in equity, and therefore the borrower must do equity before the court will exercise its equitable powers].) Plaintiff only alleged that

---

[3] "We are mindful that foreclosures are far too frequent occurrence . . . ." (*Shuster, supra,* 211 Cal.App.4th at p. 513.)

it was in a position to tender. "[A]n action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578; *see also Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 ["A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust"].) Some courts have indicated they have discretion to excuse this requirement when its application would be inequitable. (See *Humboldt Savings Bank v. McCleverty* (1911) 161 Cal. 285, 290; *Shuster, supra,* 211 Cal.App.4th at pp. 512-513; *Pantoja v. Countrywide Home Loans, Inc.* (N.D. Cal. 2009) 640 F. Supp. 2d 1177, 1184.) Such inequity would arise when the borrower challenges the validity of the underlying debt. (*Humboldt Sav. Bank vc. McCleverty, supra,* 161 Cal. at p. 291; *Shuster, supra,* 211 Cal.App.4th at p. 512; *Onofrio v. Rice, supra,* 55 Cal.App.4th at p. 424.) Plaintiffs have not pleaded facts showing that application of the tender rule would be inequitable here. Also, the borrower must tender when the challenged foreclosure sale is voidable due to an irregularity in the foreclosure process (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 877-878; *Karlsen v. American Sav. & Loan Assn., supra,* 15 Cal.App.3d at p. 117, but not when the deed of trust or trustees deed is void on its face. (*Dimock v. Emerald Properties, supra,* 81 Cal.App.4th at p. 878; *Shuster, supra,* 211 Cal.App.4th at p. 512.) Here, the plaintiff alleged the documents are irregular, but sets forth no facts that they are void on their face.

Moreover, to the extent the claim is for damages against Deutsche as trustee, the court in *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 340 explained that Civil Code section 2924, subdivision (d) "makes the recording of the notice of default by the beneficiary, and any other statutorily authorized act of the beneficiary acting as trustee, a privileged communication under Civil Code section 47." Civil Code section 47, subdivision (c) in turn, creates a qualified privilege for "a communication, without malice, to a person interested therein." (See Civ. Code, § 2924, subd. (b); but see *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1517 ["non-judicial foreclosure activity constituted privileged communications under the litigation privilege [of section 47,

12

subdivision (b)(2)"].) Section 2924, subdivision (b) also creates the following privilege for trustees: "In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage."

Plaintiff does not allege any malice or that Deutsche did not act in good faith. Plaintiff claims that all the defendants acted fraudulently, but does not set forth facts as to Deutsche. Rather Deutsche is the assignee; and there is no allegation that Deutsche participated in any wrongdoing in connection with the assignment. Similarly, plaintiff does not allege that Deutsche was involved in the notice of default.

As to the substitution of trustee, plaintiff alleges that it was not properly executed or notarized and was backdated to before the notice of default was recorded. Here, by alleging the acts were done fraudulently, the allegations of malice may be sufficient. But because of the tender rule, plaintiff has failed to state a cause of action for wrongful foreclosure. Moreover, even if the assignment or other documents were invalid, plaintiff has not alleged facts showing prejudice, a requirement for challenging a nonjudicial foreclosure sale. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 271-272.)


### G.     Unfair Competition (Deutsche and RCS)

California Business & Professions Code sections 17200 et seq.—UCL—prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." To establish a violation of section 17200, a plaintiff may establish a violation under any one of these prongs. To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. (*People v. McKale* (1979) 25 Cal.3d 626, 635.). A "fraudulent" business act or practice is one in which members of the public are likely to be deceived. (*Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1223 fn.8, citations omitted.). "'Fraudulent,' as used in the statute, does not refer to the

13

common law tort of fraud but only requires a showing members of the public "are likely to be deceived."'" (*Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 618.)

There are various definitions of an "unfair" business practice. (See *Drum v. San Fernando Valley Bar Assn.* (2010) 182 Cal.App.4th 247, 256.) One requires that the public policy involved be "tethered to specific constitutional, statutory, or regulatory provisions." (*Ibid.*) Another is whether the alleged business practice "'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" (*Id.* at p. 257.) And another is that the injury be substantial and not outweighed by some countervailing benefits to consumers or competition and that could not reasonably be avoided. (*Ibid.*)

In order to state a claim under the UCL based on fraudulent conduct, plaintiff must allege facts sufficient to establish that the public is likely to be deceived by defendant's conduct. Plaintiff alleges RCS violated Civil Code section 2923.5 and Deutsche is in violation of Civil Code section 2932.5. Plaintiff further alleges that defendants conspired to foreclose improperly in violation of the terms of the foreclosure statute—Civil Code section 2924 et seq. Plaintiff also alleges negligent misrepresentation based on Civil Code sections 1573, 1574. (See *Hartwell Corp. v. Bumb* (9th Cir. 1965) 345 F.2d 453, 455-456.)

Plaintiff alleges that RCS offered loan modifications to help distressed borrowers keep their homes, but actually increased rates and payments; offered trial plans, but then stringing borrowers along for long periods and ultimately repudiated the offers; and harassed borrowers to give up the homes before a trustee sale. Plaintiff alleges Deutsche improperly and fraudulently executed a notice of default, substitution of trustee, and assignment of the deed of trust and backdated certain documents, in order to commence foreclosure proceedings improperly and fraudulently.

Plaintiff alleges that defendants engaged in these practices to have borrowers believe that their loan modification requests were being dealt with in good faith, while defendants were moving ahead with defaults and foreclosure proceedings. Plaintiff was

14

lulled into not making payments, thus facilitating the foreclosure sale. Borrowers are injured because they do not have the meaningful participation of lenders so that there would be time to unearth defects to prevent foreclosures. And the process damages their credit rating so that they cannot obtain financing. The harm to borrowers outweighs any countervailing benefit. Borrowers cannot avoid the injuries because they do not know that they are at a high risk for failure during the loan modification steps.

Plaintiff also alleges that the actions of defendant RCS are fraudulent in that the members of the public are likely to be deceived into believing that RCS has expertise in loan modifications and that they will be granted a fair review of loan modification requests. And the members of the public are likely to be deceived into believing documents are properly executed and not backdated. Plaintiff has suffered financial and emotional damages as a result of defendants' acts.

In the 272 paragraphs, there are buried allegations of unlawful, unfair or fraudulent business practices on the part of defendants, at least as to violations of Civil Code sections 1572 and 1574. (See *Byrum v. Brand* (1990) 219 Cal.App.3d 926, 941 [Civil Code section 1572(2) requires a positive assertion that can be an element of negligent misrepresentation].) Although not a model of pleading, plaintiff has alleged sufficient damages subject to restitution, including the onerous loan modifications, accrual of arrears, and loss of his home, as well as damage to his credit. Moreover "examples of loss of money or property sufficient to confer standing under the UCL include allegations of damage to a consumer's credit score, or payment of extra money as a result of defendants' conduct. [Citation.]" (*Valasquez v. Chase Home Financial LLC* (N.D. Cal. 2010) [2010 WL 3211905, fn. 6]; see *Rubio v. Capital One Bank* (9th Cir. 2010) 613 F.3d 1195, 1203-1205.) Federal courts have held that allegations similar to the foregoing ones are sufficient to survive a motion to dismiss at the pleading stage. (See e.g. *Ansanelli, supra,* [2011 WL 1134451].) As plaintiff has stated a cause of action for violation of the UCL, we need not reach whether he has standing and there are damages as to any of the other alleged statutory violations to suffice for purposes of UCL violations.

15

Accordingly, the demurrer to the cause of action for a violation of the UCL should have been overruled. [4]

## CONCLUSION

Scouring all of plaintiff's allegations, causes of action are stated only for negligent misrepresentation and a violation of the UCL based on such negligent misrepresentation. We express no opinion as to whether there are other bases for the UCL cause of action. We also express no opinion on whether there is any merit to the causes of action stated by plaintiff.

## DISPOSITION

The judgment is reversed as to the Fourth and Seventh Causes of Action and otherwise affirmed.  Each party shall bear his or its own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

I concur:

KRIEGLER, J.

---

[4]     Defendants' motion to expunge a lis pendens and for sanctions is denied, without prejudice.  These matters may be considered by the trial court on remand.

16

I concur in the judgment except in one narrow respect. I would limit the Business and Professions Code section 17200 claim to negligent misrepresentations under the following circumstances: the erroneous statement was made by a Residential Credit Solutions, Inc. employee; the Residential Credit Solutions, Inc. employee negligently stated a customer will secure a better interest rate by entering into a new loan; the customer's existing interest rate was tied to the London Interbank Offered Rate; the new loan produced a higher interest rate and monthly payment than the customer's prior loan because the London Interbank Offered Rate dropped; and the Residential Credit Solutions, Inc. employee was acting as the agent of Deutsche Bank National Trust Company. Plaintiff, Antonio Tortolano, has failed to allege specific facts which give him standing to pursue any other unfair competition claim. (Bus. & Prof. Code, § 17204; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 317, 322-325.)

TURNER, P. J.