Opinion
 

 SONENSHINE, J.
 

 Marshall D. and Myra Rice appeal from a judgment entered against them and in favor of Evelyn J. Onofrio after a court trial.
 

 I
 

 In June 1990, Onofrio was in serious financial trouble. The home in which she had lived since 1971 was in foreclosure and she was in bankruptcy.
 
 *417
 
 Delinquent on her first and second mortgages as well as community association dues, Onofrio was working with Ruth Gold to obtain new financing.
 

 Although Marshall did not know Onofrio, he visited her on June 29 to inquire about the foreclosure sale scheduled for later that day. Onofrio told him the matter was taken care of, but he nevertheless attended the sale. Learning it had been postponed, Marshall approached Onofrio and gave her a business card, indicating he was a real estate broker specializing in foreclosure properties. Telling Onofrio he knew Gold and believed she did not know what she was doing, he invited Onofrio to call him for help.
 

 Onofrio was satisfied with Gold’s services, but Marshall’s comments made her leery. In response to Onofrio’s call, the two met again. Wasting no time, Marshall prepared a promissory note and deed of trust indicating his wife, Myra Rice, would lend Onofrio $14,000 from her sole and separate property. The deed described Myra’s beneficial interest in the same terms. The accompanying disclosure statement indicated a 35 percent annual interest rate.
 

 Onofrio executed the documents, but $14,000 proved insufficient, and Marshall prepared an identical note and trust deed, except now the amount of the loan was $21,000. The escrow statement acknowledged, “Marshall D. Rice is a licensed Real Estate Broker in the State of California and is acting as the Broker and the escrow company in this transaction. No escrow fee is charged.” Escrow closed on July 5. Although Marshall should have produced a settlement statement within 24 hours, he failed to do so until July 11. Marshall never prepared a disclosure document or a foreclosure consultant contract.
 

 Matters did not improve for Onofrio, and the Rices were in hot pursuit. On September 21, 1991, Myra recorded a notice of default and election to sell under her deed of trust. By April 30, 1992, the Rices had purchased the second deed of trust. On May 7, the couple, as husband and wife and joint tenants, recorded an assignment of deed of trust from the second lienholder
 
 [1]
 
 and on June 10 bought the property at the foreclosure sale conducted pursuant to Myra’s September 1991 notice of default. Finally on June 17, the Rices recorded a trustee’s deed upon sale acknowledging they now owned the property.
 

 Onofrio initiated the underlying lawsuit alleging federal truth in lending violations in the first eight causes of actions. The court dismissed those
 
 *418
 
 pursuant to the Rices’ summary adjudication motion. The Rices were not so lucky with the rest of the complaint. The court found against them on the 9th through the 14th causes of action and on the 16th cause of action based on Marshall’s violations of his duties as a Business and Professions Code section 10131 real estate broker and as a foreclosure consultant pursuant to Civil Code section 2945 et seq.
 
 [2]
 
 They also lost on the 15th cause of action alleging Myra’s violations of section 2924 et seq. The court entered judgment against Myra and Marshall, awarding $230,097 in damages and $52,788 in attorney fees and costs. The court rescinded the foreclosure and voided the Rices’ note and purchase of the second.
 

 II
 

 In its statement of decision, the trial court found, inter alia, Marshall was acting as a real estate broker pursuant to Business and Professions Code section 10131 et seq. and as a foreclosure consultant pursuant to Civil Code section 2945 et seq. The Rices contend “these two code sections are mutually exclusive, and . . . they cannot be in violation of both.” More specifically, they explain if Marshall was acting as a real estate broker for Myra, then, as a matter of law, he was exempt from the statutes governing financial consultants. The Rices misconstrue the relevant statutory schemes.
 

 When enacting the mortgage consultant foreclosure act in 1979, the Legislature was very specific in delineating its purpose. Section 2945, subdivision (a) states: “The Legislature finds and declares that homeowners whose residences are in foreclosure are subject to fraud, deception, harassment, and unfair dealing by foreclosure consultants from the time a Notice of Default is recorded . . . until the time of the foreclosure sale. Foreclosure consultants represent that they can assist homeowners who have defaulted on obligations secured by their residences. These foreclosure consultants, however, often charge high fees, the payment of which is often secured by a deed of trust on the residence to be saved, and perform no service or essentially a worthless service. Homeowners, relying on the foreclosure consultants’ promises of help, take no other action, are diverted from lawful businesses which could render beneficial services, and often lose their homes, sometimes to the foreclosure consultants who purchase homes at a fraction of their value before the sale.”
 

 Section 2945.1, subdivision (a) defines a foreclosure consultant as “any person who makes any solicitation, representation, or offer to any owner to perform for compensation or who, for compensation, performs any service which the person in any manner represents will in any manner do any of the
 
 *419
 
 following: [*][] (1) Stop or postpone the foreclosure sale. [*][] (2) Obtain any forbearance from any beneficiary or mortgagee. [f] (3) Assist the owner to exercise the right of reinstatement provided in Section 2924c. [*]□ (4) Obtain any extension of the period within which the owner may reinstate his or her obligation, [fj (5) Obtain any waiver of an acceleration clause contained in any promissory note or contract, secured by a deed of trust or mortgage on a residence in foreclosure or contained in any such deed of trust or mortgage. [1 (6) Assist the owner to obtain a loan or advance funds. [][] (7) Avoid or ameliorate the impairment of the owner’s credit resulting from the recording of a notice of default or the conduct of a foreclosure sale. [<U (8) Save the owner’s residence from foreclosure.”
 

 Section 2945.1, subdivision (b)(3) exempts real estate brokers who, with their own funds, make direct loans to homeowners secured by a deed of trust on the property. This transaction fails to qualify because Myra, not Marshall, loaned the money to Onofrio. The result would be the same even if we considered this a direct loan from Marshall because the section also mandates the broker must in good faith attempt to assign the loan to a lender. Marshall did not do this.
 
 [3]
 

 Our inquiry does not end here because the same section also exempts real estate brokers who, “(A) engage[] in acts whose performance requires licensure under [the real estate licensing statutes], (B) [are] entitled to compensation for the acts performed in connection . . . with the arranging of a loan secured by a lien on a residence in foreclosure, (C) do[] not claim, demand, charge, collect, or receive any compensation until the acts have been performed . . . and (D) do[] not acquire any interest in a residence in foreclosure directly from an owner for whom the person agreed to perform the acts other than as a trustee or beneficiary under a deed of trust given to secure the payment of a loan or that compensation.” (§ 2945.1, subd. (b)(3).)
 

 Marshall’s activities come within the parameters of A, B and C. Business and Professions Code section 10130 provides in part, “It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker . . . without first obtaining a real estate license from the department.” Business and Professions Code section 10131, subdivision (d) defines a real estate broker as one who “negotiates loans ... or
 
 *420
 
 performs services for borrowers ... in connection with loans secured directly or collaterally by liens on real property. . . .”
 
 [4]
 
 Therefore, anyone who solicits borrowers or lenders for loans in connection with secured real property liens
 
 “must hold a real estate broker’s license.”
 
 (Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 1996) 16:166, p. 6-32, original italics;
 
 Stickel
 
 v.
 
 Harris
 
 (1987) 196 Cal.App.3d 575, 583-584 [242 Cal.Rptr. 88].) Moreover, Marshall secured a loan for which he was entitled to compensation. (Bus. & Prof. Code, § 10131.)
 
 [5]
 

 Marshall’s problem arises in connection with section 2945.1, subdivision (b)(3). He acquired an interest in Onofrio’s residence directly from foreclosure when it was Myra and not he who loaned Onofrio the money. And as explained, even if we assume it was Marshall’s loan, he fails to qualify for the exemption because he did not attempt to place the loan. Indeed, the Senate Judiciaiy Committee in its original analysis of Senate Bill No. 1128, 1979-1980 Regular Session warned of just this kind of conduct. “Many homeowners who have found themselves in default on their home mortgage payments have actually lost their homes through deceptive loans made to them by unscrupulous business [people.] []0 These ‘loans’ usually require the homeowner in default to convey, via a Trust Deed, the homeowner’s interest in his [or her] home (i. e. . . . equity) in exchange for the payment of the full amount of the regular mortgage arrearage. The loans are usually written with high finance charges, and the payments become difficult for the homeowner to make. [T As soon as the homeowner defaults on the second loan, the money lender, or a third party to whom the Trust Deed had been conveyed in the meantime, attempts to evict the homeowner out of his [or her] home.”
 

 As is obvious, the very purpose of the statutory scheme was to prevent exactly the type of conduct in which the Rices engaged. The court did not err in finding Marshall was both a real estate broker and a financial consultant.
 

 Ill
 

 Section 2945.6 provides, “(a) An owner may bring an action against a foreclosure consultant
 
 for any violation
 
 of this chapter. Judgment shall be
 
 *421
 
 entered for
 
 actual damages,
 
 reasonable
 
 attorneys’ fees and costs,
 
 and appropriate
 
 equitable relief
 
 The court also
 
 may,
 
 in its discretion,
 
 award exemplary damages
 
 and
 
 shall award exemplary damages
 
 equivalent to at least
 
 three times the compensation received by the foreclosure consultant in violation of subdivision (a), (b), or (d) of Section 2945.4, in addition to any other award of actual or exemplary damages.
 
 HQ (b) The rights and remedies ... are cumulative to, and [are] not [to be construed as] a limitation of, any other rights and remedies provided by law. . . .” (Italics added.)
 

 The court found Onofrio’s actual damages were $65,174 and the appropriate exemplary damages were $195,523. It gave the Rices a $36,000 offset for the fair rental value of the property for the 36 months Onofrio was in possession, but failed to pay rent. The court determined Onofrio’s reasonable attorney fees and costs were $52,788. It also found the “Trustee’s Sale concerning the third Deed held by defendant, Myra S. Rice, was not regularly conducted.” Exercising its equitable powers, the court found “the Second Note and Trust Deed . . . which was ultimately assigned to defendants ... are void and hereby cancelled; [<][]... the Third Note and Trust Deed held by Myra S. Rice ... are void and hereby cancelled”; and “the Trustee’s Deed Upon Sale ... is ... set aside and cancelled . . . .”
 

 The Rices challenge most aspects of the award. In our review, we keep in mind the Legislature mandated the “provisions of this article shall be liberally construed to effectuate [its] intent and to achieve [its legislative] purposes.” (§ 2945, subd. (b)(2).)
 

 Attorneys Fees and Costs
 

 The Rices contend if the judgment is upheld pursuant to the ninth through fourteenth causes of action, the attorney fees and costs award must be reversed because the applicable Business and Professions Code sections do not provide for attorney fees. Conversely, if the court based its order on section 2945 et seq. we must remand for determination of the fees attributable to only that cause of action.
 
 [6]
 

 Their argument fails because it is premised on the faulty assumption the court erred in finding section 2945 et seq. applicable. Moreover, section 1717 provides ample statutory authority for the award as Myra’s note and deed of trust contained attorney fee provisions.
 

 
 *422
 
 Actual Damages
 

 The court determined Onofrio’s actual damages were $65,174, the difference between what the Rices paid for the property at the foreclosure sale and the property’s market value at that time. It reasoned their actions resulted in an unlawful taking and the measure of what they took is what Onofrio lost. Stated another way, the Rices’ unbegotten gain was Onofrio’s lost equity.
 

 The Rices allege-this makes no sense and it violates section 1692.
 
 [7]
 
 They explain
 
 Onofrio did not lose anything
 
 because the court’s formula disregards their three years of payments on the property liens as well as the actual money they loaned. Moreover, the property was returned to her and the second and third notes and deeds of trust were canceled.
 

 The award makes perfect sense in context of sections 2945 and 2945.6. Damages awarded for section 2945 et seq. violations are cumulative and therefore within the parameters of section 1692. Moreover, the Legislature directed us to liberally construe the remedies available pursuant to section 2945.6 and intended that any lien received on real property by a foreclosure consultant in violation of the act is voidable and unenforceable. (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust & Mortgages, § 9:102, p. 336.)
 

 Although we have found no cases defining the standard by which section 2945.6 actual damages are to be determined,
 
 Salahutdin
 
 v.
 
 Valley of California, Inc.
 
 (1994) 24 Cal.App.4th 555 [29 Cal.Rptr.2d 463], is instructive. There, the court examined the propriety of the trial court’s damage award to a plaintiff injured by the defendant’s constructively fraudulent misrepresentations. Specifically, the defendant real estate broker assured the plaintiff the property he was purchasing was large enough to be subdivided. In fact, the broker relied solely on the multilisting information, doing nothing to independently confirm its accuracy. When the property turned out to be too small to subdivide, plaintiff sued. The court determined plaintiff’s damages “according to Civil Code section 3333, by comparing the value of the property plaintiffs received and the value of the property they would have received
 
 *423
 
 had [the] representations been true—the ‘benefit of the bargain’ measure.”
 
 (Id.
 
 at p. 561.)
 
 [8]
 

 The Court of Appeal affirmed. It first noted, “ ‘. . . a fiduciary is liable to his [or her] principal for
 
 constructive fraud
 
 even though his [or her] conduct is not actually fraudulent. . . .’”
 
 (Salahutdin
 
 v.
 
 Valley of California, Inc., supra,
 
 24 Cal.App.4th at p. 562, original italics.) In those situations, the court explained the out-of-pocket standard (§ 3343) suggested by appellant is inapt for it compensates for the difference between the actual value received and the value conveyed. The appropriate standard is the benefit of the bargain, that is the difference between the actual value of what the plaintiff received and that which he or she expected to receive. (§ 3333.)
 
 (Salahutdin
 
 v.
 
 Valley of California, Inc., supra,
 
 24 Cal.App.4th at pp. 567-568; see also
 
 In re Woosley
 
 (Bankr. 9th Cir. 1990) 117 B.R. 524.)
 

 The court correctly measured Onofrio’s damages. Marshall breached his fiduciary obligation to Onofrio; she is to be compensated accordingly.
 

 Exemplary Damages
 

 Relying on section 2945.6, the Rices maintain treble exemplary damages are to be based on compensation received in violation of section 2945.4, subdivision (a), (b) or (d). Because there were no such violations, the court abused its discretion.
 

 The Rices misread the statute. A court has two opportunities to award exemplary damages for section 2945 et seq. violations. Pursuant to section 2945.6, it
 
 may
 
 award exemplary damages in an amount it determines appropriate. However, when the court determines there were section 2945.4 violations, it
 
 must
 
 award exemplary damages in an amount at least three times that of the unlawful compensation. Therefore, the court had the discretion to award exemplary damages, but having found section 2945.4, subdivision (d) violations it was required to award at least three times the amount it determined to have been Marshall’s appropriate compensation, i.e., his profit.
 

 Rescission
 

 The Rices argue Onofrio was not entitled to relief on her 15th cause of action for rescission because she failed to tender the amount necessary to
 
 *424
 
 cure the default. The Rices explain: “Whenever there is a challenge to the validity of the trustee's sale, there is an attempt to have the sale set aside to have the title restored. The action is in equity, and when the trustor seeks to set the sale aside, he [or she] is required to do equity before the court will exercise its equitable powers. Therefore, as a condition precedent to an action by the trustor to set aside the trustee’s sale on the grounds that the sale is voidable, the trustor must pay, or offer to pay, the secured debt, or at least all of the delinquencies and costs due for redemption, before he [or she] commences his [or her] action, or in his [or her] complaint. Without an allegation of such a tender in the complaint that attacks the validity of the sale, the complaint does not state a cause of action.” (4 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Deeds of Trust & Mortgages, § 9:154, pp. 507-508, fns. omitted.)
 

 The Rices ignore significant parts of the authority upon which they rely. “[A] tender may not be required where it would be inequitable to do so.” (4 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 Deeds of Trust & Mortgages § 9:154, at pp. 508-509, fn. 86.) “Similarly, when the person making the claim has a counter-claim or set-off against the beneficiary, . . . it is deemed that they offset each other, and if the offset is equal to or greater than the amount due, a tender is not required .... Also, if the action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmative of the debt."
 
 (Id.
 
 at p. 512, fns. omitted.)
 

 IV
 

 The Rices complain the trial court was without statutory authority to cancel the note secured by the second trust deed and, in any event, Onofrio never requested this relief.
 

 The record belies the latter contention. Onofrio sought cancellation of this instrument in her amended complaint and the matter was argued to the court as part of Onofrio’s request for damages. The other argument is equally meritless. As Miller and Starr explained,
 
 ante,
 
 the court acted well within equitable powers pursuant to section 2945 et seq.
 

 V
 

 The Rices requested findings on 61 questions. On appeal they complain the trial court failed to make adequate findings on 20 of those. They are wrong.
 

 Code of Civil Procedure section 632 provides in part, “upon the trial of a question of fact by the court, written findings of fact and conclusions of law
 
 *425
 
 shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial. . . .” The purpose of the statement is to provide an explanation of the factual and legal basis for the court’s decision. A statement is sufficient when it addresses those determinations with which the appellant takes issue and which are relevant to the judgment.
 
 (Miramar Hotel Corp.
 
 v.
 
 Frank B. Hall & Co.
 
 (1985) 163 Cal.App.3d 1126, 1130 [210 Cal.Rptr. 114].)
 

 The statement of decision passes appellate muster. It responds to each material issue raised by the Rices. Indeed, they fail to identify any shortcomings relevant to the matters they now challenge.
 

 The judgment is affirmed.
 
 [9]
 
 Onofrio shall recover her costs on appeal.
 

 Wallin, Acting P. J., and Rylaarsdam, J., concurred.
 

 A petition for a rehearing was denied June 16, 1997, and appellants’ petition for review by the Supreme Court was denied August 13, 1997.
 

 [1]
 

 Actually, the Rices maintained their minor daughter bought the second with her own funds. The trial court found to the contrary.
 

 [2]
 

 All future statutory references are to the Civil Code unless otherwise indicated.
 

 [3]
 

 Moreover, “if a foreclosure sale is conducted with respect to the deed of trust, the person conducting the foreclosure sale [can have] no interest in the . . . foreclosure [property] or in [its] outcome . . . and [the sale cannot be] owned, controlled, or managed by the lending broker. . . .”(§ 2945.1, subd. (b)(3).) The lending broker may not acquire any interest in the subject property directly from the owner other than as a beneficiary under the deed of trust. And finally, the direct loan may not be made for the purpose or effect of avoiding or evading the applicable statutory provisions.
 
 {Ibid.)
 

 [4]
 

 The trial court in its statement of decision found Marshall “was acting as a broker pursuant to Business and Professions Code [section] 10131 et seq.”
 

 [5]
 

 In defining who qualifies as foreclosure consultants and in determining which actions are violative of the act, the focus is directed to the type of service provided rather than whether a fee is paid. Real estate brokers come within the purview of the act when they engage in the activities as outlined within the statute whether or not they are entitled to compensation. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1128 (1979-1980 Reg. Sess.) as amended May 16, 1979.)
 

 [6]
 

 The Rices also intimate Onofrio was not the prevailing party because she lost on her first eight causes of action and, in any event, she should be allowed her fees and costs for only the sixteenth cause of action. However, the court considered these arguments at the motion to tax costs, reducing the requested fees by 25 percent. The Rices have no reason to complain now.
 

 [7]
 

 Section 1692 provides in pertinent part: “A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him [or her] . . . and any consequential damages to which he [or she] is entitled; but such relief shall not include duplicate or inconsistent items of recovery.”
 

 [8]
 

 Section 3333 provides: “For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.”
 

 [9]
 

 The Rices allege the court erred in entering a monetary judgment against Myra. They explain Onofrio was not entitled to damages on this cause of action and she failed to prevail on any of the other causes of action in which she named Myra as a defendant. This is no longer an issue. At oral argument, Onofrio’s counsel stipulated the court entered the monetary judgment against Marshall
 
 alone.