Filed 6/9/16  Steele v. Trammell CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ROBERT STEELE, | D068161 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00056367-CU-FR-NC) |
| LLOYD TRAMMELL et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment and order of the Superior Court of San Diego County, Earl H. Maas, III, Judge.  Affirmed.

Amezcua-Moll & Associates, Rosemary Amezcua-Moll and Sarah J. Nowels for Plaintiff and Appellant.

Adli Law Group, Dariush G. Adli and Bernard Jasper for Defendants and Respondents.

In this action for damages for breach of an employment agreement and related tort claims, plaintiff Robert Steele appeals from a defense judgment after court trial, issued in favor of a group of defendants and respondents headed by defendant and respondent

Lloyd Trammell, who was a controlling member of Steele's former employers. Steele further challenges an underlying order denying his new trial motion.[1]

At trial, Steele pursued recovery on theories of breach of employment contract and its associated covenant of good faith and fair dealing, breach of fiduciary duty, fraud or fraudulent transfer, conversion, and declaratory relief on the interpretation of the contract. Steele sought to prove that Trammell, together with his associated companies, Acoustic Control Science, LLC (ACS) and its manager Audio X, LLC (Audio X) (together, the "employer entities") misappropriated and transferred certain acoustic technology in which he had an ownership interest, without compensating him for it as required by the written employment agreement.

On appeal, Steele contends the trial court's statement of decision prejudicially omitted to resolve and make essential findings on all the causes of action and material issues raised by the pleadings. In particular, he claims essential findings were not made on the existence of contract or tort liability of Trammell as an individual, or on an alter ego basis, since Trammell had signed the employment agreement as a representative of the employer entities. (See fn. 3, *post.*) Steele contends the trial court erroneously failed to render a decision on his declaratory relief request regarding an ongoing ownership

---

[1]    In motion proceedings, we have augmented the record to include the trial court's final statement of decision, and the second amended complaint (SAC), as shall later be explained. The additional defendants and respondents who have appeared on appeal include Robert Wolff, Audio Genesis Group, LLC (Audio Genesis), and Max Sound Corporation (Max Sound, which was formerly known as So Act Network, Inc.); sometimes together, "Respondents." Their roles will be described in the factual and procedural portion of this opinion.

2

interest in the employer entities or their successors, or on his breach of fiduciary duty cause of action.

In addition to claiming the statement of decision was insufficient, Steele seems to argue that the trial court's decision was "against law," such that his new trial motion should have been granted, in view of the weight of the evidence he brought forward. (See Code Civ. Proc.,[2] § 657, subd. (6) [new trial granted for insufficiency of the evidence, or where decision is against law].)

We conclude the final statement of decision adequately resolved each of Steele's contract and tort claims. To the extent he makes similar arguments concerning the denial of the new trial motion, no error has been demonstrated. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. Identity and Relationship of Parties

In April 2007, Steele, an electrical engineer, agreed to serve as the chief executive officer (CEO) of the employer entities. ACS was the owner of audio technology and Audio X licensed it.[3] Steele became acquainted with Trammell and another controlling member of the employer entities, Brad Hirou (not a party to this action), when Wolff

---

[2]    All further statutory references are to the Code of Civil Procedure unless noted.

[3]    Neither of the employer entities was served in this action and neither has appeared at trial or in this appeal.

3

introduced them.[4]  Wolff is a trained religious leader (pastor), and was a mutual friend of Steele and Trammell.  Hirou and Steele had previously worked together for another company.

The employer entities were engaged in the business of developing audio technology.  Trammell signed the employment agreement (the agreement; lodged as an exhibit here) as the manager of both employer entities.  Wolff was also involved in the affairs of the employer entities, making introductions for them during the startup phases.

In Steele's agreement, his compensation was set at $144,000 as an annual salary, with paid vacation.  Under its paragraph 4.5, he was to receive a 4.3 percent membership interest in the employer entity ACS, unless "convicted of a felony charge related to his conduct as an employee" during the next three years of employment.  Under its paragraph 5.3, the agreement was not to be terminated if the employer entities were merged or consolidated into another company, and any such transferee would continue to be bound by the agreement, including its membership interest provisions.  Paragraph 14 of the agreement stated in relevant part, "the Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, representatives, successors and assignees."

As CEO, Steele's duties included, among other things, securing funding for the startup company.  He worked on promoting the audio technology known as Audio

---

[4]    During closing argument, Steele's counsel referred to Hirou as having disappeared and thus being the "empty chair" at trial, who was being blamed by Respondents for any of their alleged errors.

4

Genesis 3D, "AG3D," an audio enhancer. Trammell initially developed the product, a customer service that could create three dimensional (3-D) or surround sound. Trammell was pursuing a patent application for the product. Steele prepared and presented marketing materials to customers, including PowerPoint slides to demonstrate the technology. He worked on improving the service technology into its next generation, by obtaining client feedback and capital to build the business.

Steele had possession of a company laptop computer with the AG3D service program and other valuable proprietary information on it, including video and audio demonstrations of the technology. Soon, he and Trammell discovered that there was a commercially available, competing device that did the same thing as their product, at a lower cost. Trammell dropped the patent application.

Trammell and Steele disagreed about many things, and Steele's employment was terminated August 8, 2008. A few months later, Trammell sent Steele an e-mail requesting that he return all the proprietary information he had, and claiming the employer entities had a value of $17 million. Other evidence showed that the employer entities did not have any remaining assets and they stopped functioning. It was not disputed at trial that Trammell was out of money for a year or two after Steele's employment was terminated, and Trammell moved to Houston for a while. While there, Trammell worked on developing software to be licensed to create high definition audio. By September 2010, Trammell had returned to California.

Meanwhile, Wolff understood that Steele was considering litigation against the employer entities and Trammell. Over several weeks of discussions with Steele, some of

them allegedly conducted in his role as a spiritual advisor, Wolff persuaded Steele forgiveness was appropriate and it was the right thing to return the company laptop, which he did sometime between February and April 2010. Wolff never turned it on. Eventually, he offered to return it to Trammell, who said he did not have any use for it.

Trammell and Wolff discussed creating a new company to hold the software Trammell was working on. Between April and June 2010, Trammell applied for a patent on the audio sound technology, now calling it Max D.

Steele learned at some point that Trammell and Wolff were forming a new company to conduct audio sound technology business. Wolff and Trammell formed a successor company, Audio Genesis. Trammell was an officer and shareholder of Max Sound. In May 2010, Audio Genesis sold its audio technology software to So Act Network, which became Max Sound, and Audio Genesis received valuable shares in Max Sound.

### B. Pleadings; Record on Appeal

On August 14, 2012, Steele filed a complaint in 11 causes of action against Trammell and Wolff as individuals, and against the employer entities (ACS and Audio Genesis), as well as Max Sound. In the first amended complaint, Steele expanded his wrongful termination causes of action to add another Labor Code claim, as well as declaratory relief and fraudulent transfer allegations.

Steele's operative second amended complaint (SAC) alleged two contract causes of action, five tort theories, and seven claims of Labor Code violations for nonpayment of wages, etc. (Lab. Code, § 201 et seq.) Most of the causes of action were brought against

6

all defendants, and theories of alter ego and successor liability were asserted. However, breach of fiduciary duty was alleged only against Trammell and the employer entities. Also, fraudulent transfer was alleged only against Max Sound.

Respondents answered the SAC and filed a cross-complaint. Although the cross-complaint is not discussed in the appellate briefing, the attorney fees motion papers in the record disclose that the cross-complaint was directed against the two employer entities, and their defaults were taken. However, Steele's case progressed only against the individual and company Respondents.

Steele has not designated a complete appellate record. After filing his notice of appeal, he brought a motion and separate supplemental motion to augment the record or, alternatively, to take judicial notice of pleadings and documents. (Cal. Rules of Court, rule 8.155(a)(1)(A); all further rule references are to these rules unless noted; see fn. 1, *ante*.) Respondents opposed the motions, and they were deferred to this panel for decision. We issued an order on April 29, 2016, granting them in part, to augment the record with the trial court's final statement of decision and the SAC.

We denied Steele's (opposed) supplemental motion for augmentation or judicial notice of the moving, opposing, and reply papers that were submitted to the trial court on Plaintiff's unsuccessful new trial motion (denied April 23, 2015). No party had designated the reporter's transcript for that hearing date, April 23, 2015, as part of this record, and we have declined to augment the record to include it, as it is unnecessary for addressing the issues on appeal. (Rule 8.155(a)(1)(B).)

7

On another procedural point, Respondents' brief requests that this appeal be dismissed for alleged deficiencies in the record. However, no formal motion for such relief was brought and that request is now moot. (Rule 8.276.) Likewise, Respondents' brief claims that sanctions for a frivolous appeal should be awarded, but no such motion has been made, nor is it adequately supported through declaration or otherwise. (*Ibid.*)[5] The record is now sufficient to enable us to reach the merits of the issues presented.

## C. Court Trial

Trial began on Steele's two contract-based claims, based on Respondents' failure to compensate him with salary, vacation benefits, 4.3 percent stock ownership interest and stock options, as well as on the alleged breaches of covenant of good faith and fair dealing. He argued alter ego principles applied, such that Trammell was the same as the now defunct employer entities. Steele further sought declaratory relief in the form of a judicial determination that there exists a written binding contract for such compensation. (§§ 1060, 1061.)

In his fraud theories, Steele claimed damages for Respondents' alleged breaches of fiduciary duty, fraud, fraudulent transfer and conversion. It is not disputed that the Labor

---

[5] To explain why dismissal would not properly be considered, we are concerned that even though Respondents strenuously opposed augmentation, they also admitted in their opposition that provisions of the SAC were argued throughout the trial. They had acknowledged in their attorney fees motion papers that the SAC was filed by stipulation to correct typographical errors, and that demurrers to it were overruled. Respondents have not been forthcoming about their earlier stipulation to the filing of the SAC, nor have they acknowledged that the record already contains the text of the final statement of decision in a minute order as well as in the formalized document.

Code claims were determined at trial to be barred by the statute of limitations. Nor is it disputed that the employer entities were not present at trial.

At trial, Steele testified and submitted documentary evidence in support of his claim that during his employment, he had prepared demonstration and distribution materials, including a PowerPoint presentation about the audio sound technology service. He argued that since similar marketing materials were used by Trammell when he started making presentations for the successor company, Audio Genesis, this showed the technology was wholly derivative. Steele took the position that the Max Sound technology was an outgrowth of the AG3D technology.

Steele accordingly claimed contract damages based on the lack of compensation he received for his surviving contractual ownership interest in the employer entities, or as accrued or deferred salary. He sought to hold Trammell as an individual responsible for such damages, both as an alter ego and because he had signed the employment agreement as a representative of the employer entities. Steele claimed that Trammell had breached fiduciary duties owed to him, and he and Wolff committed fraud and conversion of the audio technology by forming the successor companies.

Respondents presented testimony from Trammell and Wolff, and cross-examined Steele. They took the position that the employer entities' sound technology AG3D, as a service to be provided, was outdated and economically worthless. The newer software technology was not proven to be derivative of that service technology. In any event, the company laptop that Steele had did not contain the source code for the service technology or other valuable material. By June 25, 2010, Trammell was pursuing his patent

application for the replacement software sound technology, without any access to or need for the material on the laptop.

Numerous documentary exhibits were admitted into evidence. Some of them have been designated as part of the appellate record, although only one has been transmitted to this court (the employment agreement).

### D. Statement of Decision and Judgment

At the conclusion of trial on November 20, 2014, the court took the matter under submission, then issued its initial statement of decision on December 10, 2014. Within the 15 days allowed by the court, objections and requests for clarification were filed and considered.

On January 7, 2015, the court issued a minute order setting forth its final statement of decision, and requested that Respondents prepare the judgment. The same text as in the minute order also appears in a formalized final statement of decision filed the same date. In summarizing the evidence, the court noted, "[T]his case raised more questions for the Court, than answers. Additionally, in this unique case, the cross (or [Evid. Code,] § 776) examination of the adverse parties did more to enhance their credibility, than did direct for any party. Essentially, the longer the parties were on the stand, on cross, the more persuasive they became. The Court does not understand why the original [employment] relationship fell apart. None of the parties' explanations were persuasive. There apparently was useful technology and Plaintiff seems to have gathered funding, which was then not pursued by Trammell . . . . The timing of the return of personal/business property by Plaintiff was curious, but with over a year to copy the

10

computer's hard drive, and while consulting counsel, no persuasive evidence regarding the contents of the computer were presented."

The court observed that as to the employer entities, Steele was probably owed some money and was probably wrongfully terminated without cause. However, the court found it significant that neither of the employer entities was served with Steele's complaint, nor did he default them, nor did they appear at trial. Without his actual employers present, the court determined that many of the issues regarding termination of his employment could not be reached in the statement of decision. The evidence did not show that Trammell was the alter ego of the employer entities, nor did it show that Audio Genesis was the alter ego or successor of them. The court was not persuaded, by a preponderance of the evidence, that the remaining defendants were responsible for damages to Steele.

Having set forth this analytical framework, the court made findings that as to the remaining defendants, the evidence showed that the new company was formed by Trammell and Wolff in April 2010 (Audio Genesis), and they sold their company two weeks later, including the disputed technology, to Max Sound. Although Steele claimed the technology was the same, or was an improvement upon the technology owned by the employer entities, he as the Plaintiff did not present persuasive evidence tying the two products together. In particular, the court noted:

> "[N]either side provided expert testimony, or compared patents, plans, etc. While some marketing material for each was similar (or identical), it was not helpful in showing the Court how the two products were the same from a technology perspective. Plaintiff had the burden to establish that the products were related by a

11

preponderance of the evidence. Plaintiff did not meet this burden. Therefore, the Court finds in favor of the defense."

Because of the lack of proof that Trammell or Audio Genesis was an alter ego or successor to the employer entities, the court determined that no further rulings need be made, such as those requested by the parties in their postfiling briefs. Respondents were requested to prepare the judgment consistent with those findings.

On March 13, 2015, Steele timely filed his notice of intent to move for a new trial. Moving, opposing, and reply papers duly followed. On April 23, 2015, the minute order in the record notes that the motion for new trial was denied, as fully reported "in the reporter's transcript." However, neither party designated that transcript as part of our record, and no augmentation order has been made or is required.

The defense judgment stated that Respondents, the prevailing parties, could pursue motion proceedings on an award of attorney fees and costs, and they did so. On appeal, Steele has not challenged the ruling on the motion awarding attorney fees. He appeals the judgment and its incorporated order denying the new trial motion.

DISCUSSION

I

*APPLICABLE STANDARDS*

Steele chiefly argues he is entitled to a new trial based on certain defects he identifies in the statement of decision. First, he contends it omitted findings on some material issues raised at trial, which he believes makes the statement of decision and judgment "against law." (§ 657, subd. (6); *City of Los Angeles v. Decker* (1977) 18

12

Cal.3d 860, 871-872 [court considers entire record when new trial order challenged on appeal].)  Next, he contends the record establishes by a preponderance of the evidence that Trammell was the alter ego of the employer entities, and/or that the corporate Respondents are liable to him as successors of the employer entities.  Steele asks for either "a de novo review of the record to determine where the preponderance of the evidence lies," or for an abuse of discretion review that would result in reversal of the order denying a new trial.

Respondents argue that on the one hand, an abuse of discretion standard applies to the new trial order, but that on the other hand, to the extent the statement of decision is arguably defective, a substantial evidence rule should control.  (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1477 (*Kemp Bros.*) [even where trial court states incorrect reason for decision, it may be upheld on alternative methods of review, including substantial evidence].)

As augmented, the record includes not only the final statement of decision but also the trial court's January 7, 2015 minute order that contains the same language.  The dominant nature of the judgment on appeal is one issued by the court after a bench trial, based on a tentative decision, to which objections and requests for clarifications were allowed.  The court then provided an analysis of the evidence and the legal issues as presented at trial.  In this context, the denial of the new trial motion was secondary in nature to the statement of decision procedure.  We primarily examine the sufficiency of the statement of decision under well accepted rules of review.  The general rule on appeal

13

is that judgments and orders of the lower courts are presumed correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).)

Where a judgment is issued following a statement of decision by the trial court, special rules apply. A trial court "is required only to state ultimate rather than evidentiary facts" in its statement of decision. (*People v. Casa Blanca Convalescent Homes, Inc*. (1984) 159 Cal.App.3d 509, 524.) A statement of decision is adequate if it fairly and completely sets forth the factual and legal basis for the court's decision, by listing all the ultimate facts necessary to decide the issues placed in controversy by the pleadings. (*Ibid.*) Its underlying purpose is to explain the full factual and legal basis for the trial court's decision, and it is deemed sufficient when it addresses those determinations with which the appellant takes issue and which are relevant to the judgment. (*Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424-425; *Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1130.)

It is not required that a statement of decision address all the legal and factual issues raised by the parties, and rather, it should state simply the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision. (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125 (*Muzquiz*).) It need only state "ultimate rather than evidentiary facts because findings of ultimate facts necessarily include findings on all intermediate evidentiary facts necessary to sustain them." (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 599; accord, *Akins v. State of California* (1998) 61 Cal.App.4th 1, 35, fn. 29.) "In

14

other words, a trial court rendering a statement of decision is required only to set out ultimate findings rather than evidentiary ones." (*Muzquiz, supra*, at p. 1125.)

Where a statement of decision fails to make findings on a material issue, and does not fairly disclose the court's determinations on the evidence and argument at trial, error may be found. "Even then, if the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings. [Citation.] A failure to find on an immaterial issue is not error. " (*Hellman v. La Cumbre Gulf & Country Club* (1992) 6 Cal.App.4th 1224, 1230 (*Hellman*).)

On appeal, we presume the judgment is supported and will read the statement of decision as containing implied findings that are favorable to the judgment. (*Arceneaux, supra*, 51 Cal.3d at pp. 1134-1135.) The appellant has the task of demonstrating reversible error, through providing an adequate record and citations to it. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*); *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) If an appellant does not provide an adequate record to support a contention of insufficiency of the evidence to support a finding, that contention may be deemed waived. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132; *Goldring v. Goldring* (1949) 94 Cal.App.2d 643, 645; *Brockey v. Moore* (2003) 107 Cal.App.4th 86, 96.)

In the current case, standards for review on denial of a new trial motion dovetail neatly with the statement of decision rules. If the decision was appropriately issued as a

matter of fact and law, the new trial motion would have to show reason to overturn it. "[A]s a general matter, orders granting [or denying] a new trial are examined for abuse of discretion. [Citations.] [¶] *But it is also true that any determination underlying any order is scrutinized under the test appropriate to such determination.*" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859-860 (*Aguilar*), italics added; *City of Los Angeles v. Decker*, *supra*, 18 Cal.3d at pp. 871-872.) At trial, Steele as the plaintiff had the burden of proof by a preponderance of the evidence as to his contract and tort claims. "As a general rule, the 'party desiring relief' bears the burden of proof by a preponderance of the evidence." (*Aguilar*, *supra*, at p. 861.)

With these rules in mind, we next outline Steele's theories on how the trial court omitted to make findings on essential material issues presented by the pleadings. In view of the absence from trial of the employer entities, we address the legal issues presented about any alternative forms of employer contractual liability. We then look to the claims about tort liability of the individual defendants.

## II

### *CONTRACT-BASED CLAIMS; TRANSFER OF TECHNOLOGY*

### A. Introduction

To address Steele's claims that the trial court failed to resolve all material issues in the statement of decision, we first examine the nature of the parties' relationships to his theories of liability. All of the alleged breaches of contract and duty that he sought to prove were premised on the same alleged core of facts, that the technology he worked on

16

while employed by the employer entities was essentially the same valuable property as that which was later transferred to the successor companies.

Since Steele did not bring the employer entities before the court for trial, he principally sought to hold Trammell responsible on the employment agreement, both for damages and for declaratory relief on a claim for compensation (a 4.3 percent ownership interest in the successor company). Steele sought to prove that Trammell was individually liable for breach of contract, as a representative of the company, or on an alter ego basis. Alternatively, Steele sought damages for breach of fiduciary duty from Trammell, based on the transfer of the original company technology to the successor companies.

Further, the SAC pled that Audio Genesis was the successor company to the employer entities, and was therefore liable to Steele for the employer entities' obligations. The trial court expressly rejected all these theories in the statement of decision, by finding that neither Trammell or Audio Genesis was the alter ego or successor to the employer entities, and thus "the Court need not rule further." The statement of decision contains express findings that reject the basic premise of Steele's action, the near identical nature of the technology that was transferred, in terms of his failure of proof at trial of the breaches alleged. The court impliedly found no basis to issue declaratory relief that any compensation was due to Steele, whether in the form of salary or an ownership interest in the employer entities or their successors.

Our task is to examine whether the statement of decision was adequate in terms of not only its express but also its implied findings. (*Muzquiz*, *supra*, 79 Cal.App.4th 1106,

17

1124-1125; *Hellman*, *supra*, 6 Cal.App.4th 1224, 1230.) On each theory of recovery, we discuss the support in the record for the trial court's factual findings, and then analyze whether additional findings should properly be inferred from the express findings, if necessary to resolve all material issues presented.

### B. Burden of Proof Regarding Company Property

As the plaintiff who was seeking relief in damages, Steele had the burden of proof by a preponderance of the evidence as to the elements of his claims. (*Aguilar*, *supra*, 25 Cal.4th 826, 861.) Both when the statement of decision was issued and when the new trial motion was denied, the court found Steele failed to meet his burden of proof. (*Id.* at pp. 859-860 [any determination underlying any order is scrutinized under the test appropriate to such determination].)

On appeal, Steele must demonstrate there was reversible error, with citations to the record developed below. (*Duarte, supra*, 72 Cal.App.4th 849, 856.) If he did not support his claims of insufficiency of the evidence, his contentions may be deemed waived. (*Aguilar v. Avis Rent A Car System, Inc., supra*, 21 Cal.4th 121, 132.) Here, Steele cites to several portions of the reporter's transcript as supporting his references to exhibits that were admitted into evidence, concerning the marketing presentation materials used for both sets of technology, including the PowerPoint slides used for the AG3D technology owned by the employer entities. However, he did not transmit the exhibits themselves to this court, although he designated the exhibits as part of the appellate record (particularly exhibits 34, 48, 52, 209). (Rule 8.224.) The only example of these materials incorporated into the clerk's transcript is Exhibit 52, the Max D presentation which Steele

18

claims was the same as the AG3D presentation. It is difficult to second guess the trial court's evaluation of these admitted exhibits without a more complete record. However, since it is not disputed what these materials represented when the parties argued them, we will assume for the sake of argument that they are the same as represented in the opening brief and the reply brief.

With respect to the arguments on the contract claims, Steele had to prove that the employer entities breached his contract, or alternatively, that Trammell or the successor company Respondents were liable on it. On the substantive claim of breach, Steele asserted he worked on the valuable AG3D technology and was entitled to an ownership interest in it, as part of his contract entitlement. That claim fails if he did not prove that it was the same technology of the employer entities that was transferred to the successor companies, through the activities of the individual Respondents.

To prove the same technologies were involved, Steele asserts they were clearly related, as shown by their similar names and by business plan and marketing materials he provided at trial. Assuming for the sake of discussion that his brief accurately quotes the exhibits, the software version of the technology described the newer product with the same five-point description as used before, as follows:

> "1. High resolution audio reproduction with an Omni directional sound [field] using only two speakers. [¶] 2. Real, three dimensional sound field versus artificial sound field created by competing technologies. [¶] 3. A more realistic life performance quality [in] all recordings with optimal dynamic rings, base response and overall clarity. [¶] 4. Greatly reduces listener fatigue. [¶] 5. Less hearing damage at high volumes."

19

Likewise, a PowerPoint presentation previously created for the employer entities showed the two products had the following attributes or components:

"1.  Real-Time processing.  [¶] 2.  Sub Base Enhancer.  [¶] 3.  A Cross Blend.  [¶] 4.  Four Filters.

The website used by Max Sound posted a demonstration of the earlier version of the technology, to explain its acquisition from Audio Genesis.

When analyzing the evidence, the trial court's statement of decision observed that neither side had provided expert testimony or meaningful comparisons of patents and plans for the two technologies.  Plaintiff did not provide persuasive evidence to tie the two products together, and it was not helpful to rely on marketing material that was similar or identical.  In this specialized field of endeavor, Steele did not meet his burden to establish that the products, one of which was software and the other for a service, were closely related and derivative.  He thus did not show that Trammell or Wolff utilized the employer entities' assets in creating the successor companies, Audio Genesis or Max Sound.

Based on the evidence, the trial court had no basis to find that Steele had been damaged by way of his loss of an ownership interest conferred by the employer entities in an outdated product, whether by contract or otherwise.  Respondents had no remaining duty to refrain from competing with the employer entities, since the technology products were separate.  The record demonstrates that the court heard the testimony, weighed the evidence, and reached a reasoned disposition of the issues about the value of the technology.  On review of this record, we have been given no reason to dispense with the

20

application of the substantial evidence rule. (*Kemp Bros., supra*, 146 Cal.App.4th at pp. 1477-1478.)

We are nevertheless required to decide whether the court prejudicially failed to deal with any material issues about an alternative basis for liability of the remaining Respondents, individual and successors, for any contractual or other wrong committed by themselves, or in place of the employer entities.

### C. Relationship of Parties; Legal Principles on Employer Liability or Alternative Formulations (Alter Ego/Successor Liability)

A major flaw in Steele's case, as identified by the trial court, was the absence from trial of the employer entities. They were limited liability companies, which have legal existences separate from their members. (9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, § 36, p. 813; Corp. Code, § 17701.01 et seq. [California Revised Uniform Limited Liability Company Act].) The members (e.g. Trammell) have limited liability to the same extent as do corporate shareholders, but they may actively participate in the companies' management and control. (9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 36, p. 813; Corp. Code, § 17703.01, subd. (a) [members are agents of the LLC for the purpose of its business or affairs, and their acts may bind the company].) The employer entities engaged in business activity, such as hiring Steele. (Corp. Code, § 207, subd. (g).)

In applying alter ego rules, the courts consider whether in a particular case, "justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form." (*Kohn v. Kohn* (1950) 95

21

Cal.App.2d 708, 718; *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301; 9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 9, p. 785.)  Steele simply contends:  "The validity of the contract has never been disputed."  However, no evidence was presented that Trammell improperly utilized the employer entities to perpetrate a fraud or accomplish some wrongful purpose regarding the service technology.  Instead, he persuaded the court that the software technology was original in nature.  Steele did not show the same valuable technology was transferred away from the employer entities, to his damage.

To the extent Steele is pursuing Audio Genesis and Max Sound as successors to the employer entities, we find similar fault with his theory.  "If a corporation organizes another corporation with practically the same shareholders and directors, transfers all the assets but does not pay all the first corporation's debts, *and continues to carry on the same business*, the separate entities may be disregarded and the new corporation held liable for the obligations of the old."  (9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 16, pp. 794-795; italics added.)  However, if there was a legitimate separation of the two companies, and where there was no fraud, the successor corporation is not held liable for the former entity's debts.  (*Id.* at § 17, p. 796; see *Pierce v. Riverside Mortg. Sec. Co.* (1938) 25 Cal.App.2d 248, 254; *CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1120.)

Steele failed to prove that the successor companies were actually carrying on the same business as the employer entities, since the new software technology was not proven to be derivative enough of the service technology.  There was no expert testimony

22

to assist the court, and it could reasonably determine that the marketing material was not technical enough to prove the point. Steele did not prove that Trammell utilized the successor companies to evade any responsibility owed to him, or to unfairly compete with the employer entities' activities.

Accordingly, Steele did not show he was entitled to enforce the contract against the successor companies, for salary or an ownership interest, even in light of the clauses he relied on in the agreement (e.g., paragraph 5.3, "This Agreement shall not be terminated by any merger or consolidation where the Company is not the consolidated or surviving corporation or by any transfer of all of substantially all of the assets of the Company"; paragraph 14, "This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, representatives, successors and assignees . . . ."). The statement of decision fairly disclosed the court's determinations on the evidence and argument at trial, concerning the contract claims and liability for them. On appeal, the lack of more explicit findings on alter ego or successor liability is not a reversible defect, because Steele did not bring forward sufficient evidence to sustain a finding in his favor, "which would have the effect of countervailing or destroying other findings. [Citation.] A failure to find on an immaterial issue is not error." (*Hellman*, *supra*, 6 Cal.App.4th 1224, 1230.) There was no contract liability proven against any party.

Moreover, Steele has failed to provide any meaningful legal analysis supporting his alter ego or successor claims. "Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but

23

fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) "We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone & Fyke*); see also *People v. Stanley* (1995) 10 Cal.4th 764, 793.)

### D. Trammell as Representative or Manager of Employer Entities; Fiduciary Duty Regarding Transfer of Technology

Steele next contends that the statement of decision erroneously omitted any finding as to whether Trammell was individually liable as a "representative" of the employer entities under the contract, and he claims "[t]he record demonstrates by a preponderance of evidence, that Trammell was individually liable for breach of contract." Steele relies on paragraph 14 in the agreement, providing that it is binding "upon the parties hereto and their respective heirs, representatives, successors and assignees."

It is well accepted that "a corporation can act only through its agents, and in its ordinary course of business," its authorized representatives have the authority to bind the corporation. (*Moore v. Phillips* (1959) 176 Cal.App.2d 702, 709; *Grummet v. Fresno Glazed Cement Pipe Co.* (1919) 181 Cal. 509; *Jeppi v. Brockman Holding Co.* (1949) 34 Cal.2d 11, 16; 9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 108, p. 885.) In light of these principles, Steele did not show why the corporate identity should be disregarded, merely because Trammell was a manager of the employer entities and signed on their behalf, and because Trammell admitted at trial that Steele entered into

24

such an employment contract. Steele reads the agreement too broadly and without supporting authority.

Steele alternatively argues the court failed to address the breach of fiduciary duty cause of action, and "erroneously predicated its judgment on a finding that there was lack of persuasive evidence tying the AG3D technology to the technology sold by Audio Genesis." Steele contends that the evidence at trial conclusively established that Trammell and Wolff, as majority members and managers of a limited liability company, breached their fiduciary duties owed to him, as he was entitled to the status of a minority member.[6]

To plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. (*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101.) During the existence of the employer entities, Trammell was a managing member of them and owed duties to the other members that were fiduciary in nature. (Former Corp. Code, § 17153; provisions now found in Corp. Code, § 17704.09.)[7]

---

[6] Although the SAC seemed to plead fiduciary duty breaches only against Trammell and the employer entities, Steele argues on appeal that Wolff likewise owed him such duties. This discrepancy need not be addressed in light of the resolution of other issues.

[7] Corporations Code section 17704.09, currently provides in part that "(a) The fiduciary duties that a member owes to a member-managed limited liability company and the other members of the limited liability company are the duties of loyalty and care under subdivisions (b) and (c). [¶] (b) A member's duty of loyalty to the limited liability company and the other members is limited to the following: (1) To account to the limited liability company and hold as trustee for it any property, profit, or benefit derived by the member in the conduct and winding up of the activities of a limited liability company or

25

Here, the court expressly found Trammell and Wolff were not to be held responsible for the employer entities' financial obligations. When the software technology was created by Trammell, no traceable source of any business opportunity for Steele was proven to exist within it. The creation of the successor companies to market the software was not directly traceable to the employer entities. Steele did not show why he should recover against any Respondent on the basis there was some kind of ongoing fiduciary duty toward him to protect any remaining entitlement he had to any valuable employer assets. As far as the evidence showed, those assets had been exhausted, as had any enforceable fiduciary duty.

## E. Declaratory Relief

Steele also complains that the statement of decision is defective because the trial court did not make an express "judicial determination" of the things he requested in his equitable cause of action for declaratory relief. In his view, Steele adequately established at trial that he was granted a 4.3 percent ownership interest in the employer entities' assets, but was wrongfully deprived of it. However, he did not show that there were any such assets left to be transferred, or by whom.

derived from a use by the member of a limited liability company property, including the appropriation of a limited liability company opportunity. (2) To refrain from dealing with the limited liability company in the conduct or winding up of the activities of the limited liability company as or on behalf of a person having an interest adverse to the limited liability company. (3) To refrain from competing with the limited liability company in the conduct or winding up of the activities of the limited liability company. [¶] (c) A member's duty of care to a limited liability company and the other members in the conduct and winding up of the activities of the limited liability company is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law."

26

Although under section 1060, Steele was free to bring an action seeking a declaration of rights or duties, including a determination of any question of construction or validity arising under the agreement, the court was not obligated to make the desired declaration. Section 1061 provides that "[t]he court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances."

In light of the failure of proof at trial that very similar or identical technology was transferred, depriving Steele of an interest in it, it was not reversible error for the trial court to decline to issue declaratory relief. In any event, the implied findings outlined above adequately resolved all the material issues raised at trial. This statement of decision complies with the underlying purpose of such a statement, by addressing those factual and legal determinations that are relevant to the judgment and disputed by the appellant. (*Onofrio v. Rice, supra,* 55 Cal.App.4th 413, 424-425; *In re Cheryl E.*, *supra*, 161 Cal.App.3d 587, 599.)

III

*ARGUMENTS ON THE INDIVIDUAL DEFENDANTS' TORT LIABILITY*

A. Fraud

Steele asserts that his tort causes of action for fraud and conversion damages are not dependent on an alter ego theory of law, and therefore the trial court should have more fully addressed those topics in its statement of decision. Once the trial court decided that Respondents Trammell and Audio Genesis were not alter egos or successors to the employer entities, the court said it "need not rule further."

27

As the plaintiff, Steele had the burden of proof by a preponderance of the evidence that he was damaged by fraudulent acts. (*Aguilar*, *supra*, 25 Cal.4th 826, 861.) Trammell allegedly fraudulently represented to Steele that the software he developed was a different product from the service technology owned by the employer entities, in which Steele was asserting an ownership interest. According to the trial court's analysis of the evidence, the two products were not the same.

As to Wolff, the alleged fraud was the role that he played in persuading Steele to return the company laptop to Trammell, on the basis of forgiveness. At the time, Wolff and Trammell were forming a new company to market the software technology. Steele suggested that he relied on Wolff's representations that he was a disinterested religious advisor and third party, but Wolff had unfairly benefited from the return of the laptop. However, since Steele could not prove that the laptop contained valuable marketable technology that was then utilized by the successor companies, he failed to show actionable fraud.

When the entire record is considered, including the applicable burden of proof, Steele failed to prove entitlement to recovery or to a new trial on his fraud claims. (*City of Los Angeles v. Decker*, *supra*, 18 Cal.3d 860, 871-872 [entire record considered in determining if alleged error was prejudicial].)

### B. Fraudulent Transfer or Conversion

Steele argues that when the trial court's statement of decision failed to mention the causes of action for fraudulent transfer and conversion, the decision was "against law" for purposes of new trial entitlement. Steele contends that the record "conclusively

28

established that Trammell was liable for conversion for fraudulently transferring [the employer entities'] assets and technology." He likewise argues that Max Sound was the recipient of such a fraudulent transfer, without proper consideration.

These claims presuppose that Steele would be able to prove that Trammell and Wolff transferred or transformed the employer entities into their own companies. However, he could not do so, because their assets were different, in the form of the two technologies. The evidence did not establish that valuable technology was wrongfully taken from the employer entities.

As to all the challenged causes of action, the statement of decision complied with the underlying purpose of such a statement, by fully explaining the factual and legal bases for the trial court's decision. Steele did not show that he is entitled to reversal or to a new trial on any relevant remaining disputes.

## DISPOSITION

The judgment and order are affirmed. Each party shall bear its own costs of appeal.

_____
HUFFMAN, Acting P. J.

WE CONCUR:


_____
NARES, J.


_____
O'ROURKE, J.

29